Argued and submitted September 14, 1998, decision of Court of Appeals and judgment of circuit court affirmed October 7, 1999

## OREGONIAN PUBLISHING COMPANY,
an Oregon corporation,
doing business under the
assumed business name of The Oregonian;
and Erin Hoover Schraw,
*Respondents on Review,*

*v.*

## PORTLAND SCHOOL DISTRICT NO. 1J,
*Petitioner on Review.*

(CC 9308-05795; CA A83594; SC S45020)

987 P2d 480

James N. Westwood, of Miller, Nash, Wiener, Hager & Carlsen LLP, Portland, argued the cause on behalf of petitioner on review. With him on the petition and brief on the merits was Bruce L. Campbell.

Charles F. Hinkle, of Stoel Rives LLP, Portland, argued the cause and filed the response on behalf of respondents on review. With him on the brief on the merits was Per A. Ramfjord.

Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General, Salem, filed a brief on behalf of *amicus curiae* Oregon Attorney General.

Monica A. Smith, of Smith, Gamson, Diamond & Olney, Portland, filed a brief on behalf of *amici curiae* Portland Association of Teachers, Oregon Education Association, and National Education Association.

KULONGOSKI, J.

## KULONGOSKI, J.

Plaintiffs Oregonian Publishing Company (Oregonian Publishing) and its employee, reporter Erin Hoover Schraw, filed this action for injunctive relief seeking to compel defendant Portland School District No. 1J (the district) to release as public records several documents relating to an investigation of alleged misuse and theft of school property by district employees. The circuit court ordered release of two of the documents sought by plaintiffs. Defendant appealed, and the Court of Appeals affirmed. Defendant released one of the two documents, but sought review of the Court of Appeals' decision regarding the other document. We allowed review and now affirm on other grounds the decision of the Court of Appeals.

We take the following undisputed facts from the Court of Appeals' original and modified opinions and from the record. In early 1993, Ross, the campus monitor at Benson High School, notified McElroy, deputy superintendent of the district, that Ross and several other Benson High School employees had participated in misuse and theft of school property. McElroy asked the Portland School Police, an agency organized under ORS 332.531,[1] to investigate the matter. Sergeant Leedom of the school police conducted the investigation. After interviewing a number of district employees, Leedom prepared a report entitled "Personnel Investigation," describing problems with control of school property at Benson High School. That report is the subject of this opinion.

The report was delivered to McElroy, who retained it in a file in his office while the district school board reviewed the matter.[2] Ultimately, the district resolved the matter internally. Three employees ended their employment with

---

[1] ORS 332.531(1) provides, in part:

"The district school board of any school district may establish a law enforcement agency and employ such personnel as may be necessary to insure * * * the security of the real and personal property owned, controlled or used by or on behalf of the school district."

[2] McElroy discussed the subject matter of the report with the Multnomah County district attorney, who declined to investigate whether criminal charges should be filed against any district employee.

the district. One of the employees, Parr, the principal of Benson High School, retired and sent a letter to Benson High School faculty and staff announcing his retirement. That letter was quoted at length a few days later in *The Oregonian*, a newspaper owned by Oregonian Publishing.

A reporter for *The Oregonian* subsequently telephoned the district and made a request under the public records law to review "[a]ll records contained in the Portland School Police investigation of the misuse of district property by [district employees]." The district refused to release the requested records, claiming that they pertained to a confidential personnel matter and thus were exempt from disclosure under *former* ORS 192.502(8) (1995)[3] and *former* ORS 342.850(7) (1995),[4] *renumbered as* ORS 192.502(9) (1997) and ORS 342.850(8) (1997), respectively.

Pursuant to ORS 192.450 and ORS 192.460, Oregonian Publishing requested that the Multnomah County district attorney review the disputed public records and determine whether they were exempt from disclosure requirements under the public records law. The district attorney reviewed the records and determined that they were exempt from disclosure under ORS 192.502(9) and ORS 342.850(8) as records in a personnel file.

---

[3] *Former* ORS 192.502 (1995) provided, in part:

"The following public records are exempt from disclosure under ORS 192.410 to 192.505:

"\* \* \* \* \*

"(8) Public records or information the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under Oregon law."

The wording of that section remained the same when it was renumbered as ORS 192.502(9) in 1997. Or Laws 1997, ch 825, § 1. Except as where otherwise noted, we refer to the current numbering of the statute, ORS 192.502(9), throughout this opinion.

[4] *Former* ORS 342.850(7) (1995) provided:

"The personnel file shall be open for inspection by the teacher, the teacher's designees and the district school board and its designees. District school boards shall adopt rules governing access to personnel files, including rules specifying whom school officials may designate to inspect personnel files."

The wording of that section remained the same when it was renumbered as ORS 342.850(8) in 1997. Or Laws 1997, ch 864, § 9. Except as otherwise noted, we refer to the current numbering of the statute, ORS 342.850(8), throughout this opinion.

Oregonian Publishing then filed this action for injunctive relief, seeking to compel the district to release the documents in its possession relating to the investigation of alleged misuse and theft of school property by district employees. The circuit court ordered the release of two of those documents, reasoning that Parr's letter announcing his retirement had been circulated widely and therefore was not exempt from disclosure, and that the district had waived any exemption it might have had for the school police investigation report. The circuit court also ruled that the other documents requested by Oregonian Publishing were exempt from disclosure under the public records law. The district appealed, and the Court of Appeals affirmed. *Oregonian Publishing v. Portland School Dist. No. 1J*, 144 Or App 180, 925 P2d 591 (1996), *modified and adhered to* 152 Or App 135, 952 P2d 66 (1998).

After the Court of Appeals affirmed the judgment of the circuit court, the district released Parr's letter. The district then petitioned for review of the Court of Appeals' decision that the investigation report was not exempt from disclosure. On review, the district contends that the Court of Appeals adopted an inappropriately broad waiver standard that alters the nature of public records law exemptions and that, under an appropriate waiver standard, it did not waive the statutory exemption for documents in a personnel file under ORS 192.502(9) and ORS 342.850(8). The district further asserts that, because it placed the investigation report in a personnel file, the report is exempt from disclosure under ORS 192.502(9) and ORS 342.850(8). On review, we do not reach the issue of waiver because we hold that the investigation report prepared by the school police is not exempt from disclosure under ORS 192.502(9) and ORS 342.850(8).

Oregon has a long-standing policy in favor of access to public records. The general statement of legislative policy regarding public records has remained virtually unchanged for almost 140 years. An 1862 law originally granted Oregon citizens the statutory right to "inspect any public writing of this state, except as otherwise expressly provided by this code or some other statute." General Laws of Oregon, ch 8, § 707, p 326 (Deady 1845-1864). Although the 1909 Legislature limited that right to persons having "a lawful purpose,"

Or Laws 1909, ch 98, the legislature deleted that restriction 52 years later and restored the general right to inspect any public record, subject to certain statutory exemptions, Or Laws 1961, ch 160, § 4. The legislature made a structural revision of public records law in 1973, gathering records statutes into ORS chapter 192 and organizing the basic structure of the public records law as it is today. The current statement of legislative policy regarding public records, ORS 192.420, provides that "[e]very person has a right to inspect any public record * * * except as otherwise expressly provided by ORS 192.501 to 192.505." A public record "includes any writing containing information relating to the conduct of the public's business * * * prepared, owned, used or retained by a public body regardless of physical form or characteristics." ORS 192.410(4).

The 1987 Legislature adopted a "catchall exemption" in *former* ORS 192.502(8) (1987), *renumbered as* ORS 192.502(9) (1997), as a replacement for *former* ORS 192.500(2)(h) (1985). Or Laws 1987, ch 764, § 1; Or Laws 1987, ch 898, § 26; *Attorney General's Public Records and Meetings Manual*, 36-38 (1989). ORS 192.500(2)(h) (1985) exempted from disclosure "[p]ublic records or information the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under * * * ORS 342.850 * * *." ORS 192.500(2)(h) (1985) attempted to list every statute outside the public records law that in any way prohibited or restricted disclosure of public records. In addition to ORS 342.850, ORS 192.500(2)(h) (1985) listed more than 60 individual statutes and chapters in the Oregon Revised Statutes, but it was difficult to maintain as a comprehensive list because the legislature amended, added, and repealed laws affecting the disclosure of public records during each legislative session. The replacement for ORS 192.500(2)(h) (1985), *former* ORS 192.502(8) (1987), *renumbered as* ORS 192.502(9) (1997), exempts from disclosure under the public records law "[p]ublic records or information the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under Oregon law."

"When the legislature adopts an exemption to disclosure of public records * * * [o]ur task * * * is to determine and declare the legislature's meaning in the exemption adopted."

*City of Portland v. Rice*, 308 Or 118, 122, 775 P2d 1371 (1989); *see also PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) ("In interpreting a statute, this court's task is to discern the intent of the legislature."). Our first step in discerning that intent is to examine the text and context of the statute. *Id.* at 610-11. When a statute does not define a word or term, we give that word or term its plain, natural, and ordinary meaning. *Id.* at 611. Context includes "other provisions of the same statute and other related statutes," *id.*, as well as relevant judicial construction of those statutes. *See Owens v. Maass*, 323 Or 430, 435, 918 P2d 808 (1996) (context includes judicial construction of earlier versions of relevant statutes). If our analysis of those sources discloses the legislature's intent, then we proceed no further. *PGE*, 317 Or at 611.

ORS 342.850, which deals exclusively with public school teacher evaluations and personnel files, provides, in part:

> "(8)   The personnel file shall be open for inspection by the teacher, the teacher's designees and the district school board and its designees. District school boards shall adopt rules governing access to personnel files, including rules specifying whom school officials may designate to inspect personnel files."

ORS 342.850(8) does two things. First, it explicitly guarantees that certain people (the teacher, the district school board, and the designees of each) have the right to inspect teacher personnel files. Second, it explicitly requires the district to adopt rules governing access to teacher personnel files. Acting pursuant to the authority delegated in ORS 342.850(8), the district adopted rules restricting the public's access to the district's personnel files. Teacher personnel files thus fall within the ambit of the "catchall exemption" to the public records law in ORS 192.502(9).

■      The district argues that it may keep the investigation report from public view by placing that public record in a personnel file and claiming an absolute exemption for the report under ORS 342.850(8) and ORS 192.502(9) based on the report's location, rather than its content. The resolution of that issue determines the outcome of this case.

ORS 342.850 neither explicitly defines the term "personnel file" nor lists the appropriate contents of such a file.[5] Accordingly, we rely on the plain, natural, and ordinary meanings of the words "personnel" and "file" to determine the meaning of the statutory term "personnel file."

The word "personnel" means "persons of a particular (as professional or occupational) group" or "a body of persons employed in some service." *Webster's Third New Int'l Dictionary*, 1687 (unabridged ed 1993). The word "file" has two meanings relevant to this case: "a container in which papers are kept" (*e.g.*, a folder or a metal cabinet); and "a collection of cards or papers usu[ally] arranged or classified" (*i.e.*, the collection of papers residing in such a container). *Id.* at 849. Thus, a "personnel file" is a container for papers arranged or classified as to a person in a particular group or employment category, *or* a collection of such papers in such a container. Those definitions accord with our understanding of the term "personnel file" as it is commonly used. Both meanings are significant here.

The district has the authority to compile and maintain such files as are necessary to perform its statutory obligation under ORS 332.505(1)(b) to "[e]mploy personnel, including teachers and administrators, necessary to carry out the duties and powers of the board and fix the duties, terms and conditions of employment * * *." Such "personnel files" would usually include information about a teacher's education and qualifications for employment, job performance, evaluations, disciplinary matters or other information useful in making employment decisions regarding an employee.[6] The grant of rulemaking authority to the district contained in ORS 342.850(8) allows the district to adopt rules governing access to the containers of "personnel files." ORS

---

[5] Neither do the district regulations. District Regulation 5.20.110(1) suggests general categories of personnel file documents, such as "records * * * which relate to * * * character, personal history, scholarship, school reports, and other data of a confidential nature * * *."

[6] We also have considered the wording of statutes that at least arguably are contextual to those we construe today, ORS 351.065 and ORS 353.260. *See PGE*, 317 Or at 611 (first level of analysis of legislative intent behind statute includes wording of contextual statutes). We have found no contextual statute that detracts from our construction of ORS 192.502(9) and ORS 342.850(8).

342.850(8) also allows the district to control access to the records stored in each such container, because controlling access to the container itself would have no meaning without the authority to control access to the collection of papers in the container.

ORS 342.850(8) does not, however, authorize the district to exempt a public record from disclosure by placing it in a district personnel file and claiming an exemption based on the report's title or location, rather than its content. In light of the "strong and enduring policy that public records and governmental activities be open to the public," noted by this court in *Jordan v. MVD*, 308 Or 433, 438, 781 P2d 1203 (1989), and in other cases, the legislature clearly did not intend such a result. This court stated in *Guard Publishing Co. v. Lane County School Dist.*, 310 Or 32, 39, 791 P2d 854 (1990):

> "A public body may not exempt itself from its responsibilities under the Inspection of Public Records law by adopting a policy that seeks to deprive citizens of their right under the law to inspect public records. Disclosure is the norm; exclusion is the exception that must be justified by the public body."

The report at issue in this case resulted from McElroy's request that the school police investigate allegations that Benson High School staff had stolen or otherwise misappropriated district property. That is a matter of paramount public interest and concern. Although the title of the investigation report is "Personnel Investigation," the subject noted in the heading of the report is "Misuse and Theft of School District Property," without any reference to any individual district employee. The focus of the report is the general "atmosphere" at Benson High School regarding district property, with documentation and discussion of misuse and theft of such property by several district employees. The investigation report also discusses the policies in place at the school regarding donated and surplus property, and the need for improvement regarding those policies and their enforcement by the district.

Testimony by school police officers at trial indicated that, although school police routinely handle what are called "personnel investigations," the school police do not write personnel evaluations of district employees, nor are they familiar with the personnel evaluation procedures followed by the district. The recommendation at the close of the report concerns the adoption of new policies and more stringent inventory controls at Benson High School.

The investigation report does not address an individual district employee's terms and conditions of employment; neither does it recommend any employment decision regarding the individual district employees who were the subject of the investigation.[7] The district cannot restrict access to public records simply by placing the records in a personnel file or using a label, such as "Personnel Investigation," for those records. We conclude that the district must disclose the investigation report because it is not exempt from disclosure under ORS 342.850(8) and ORS 192.502(9) either as part of a personnel file or because it is labeled "Personnel Investigation."

For the reasons stated above, the investigation report at issue here is not the type of document that the legislature intended to exempt from disclosure as part of a teacher personnel file. The circuit court did not err in ordering the district to release the investigation report to Oregonian Publishing.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[7] In noting the absence of such material, we do not mean to suggest that inclusion in the report of personnel action recommendations, whether volunteered by Leedom or sought by McElroy, necessarily would change the result we announce today.