Argued and submitted September 27, 2004, at University of Oregon School of Law, Eugene, judgment on claim for sex discrimination reversed; otherwise affirmed February 2, 2005

Rita GIBSON,
*Appellant,*

*v.*

DOUGLAS COUNTY,
*Respondent.*

01-CV-3214-CC; A122383

106 P3d 151

Marianne Dugan argued the cause for appellant. With her on the briefs was Facaros & Dugan.

Kirk Peterson argued the cause for respondent. With him on the brief was Bullard Smith Jernstedt Wilson.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Bearden, Judge pro tempore.

BREWER, C. J.

## BREWER, C. J.

Plaintiff appeals from summary judgment for defendant Douglas County in this action for breach of contract, promissory estoppel, and sex discrimination under *former* ORS 659.030 (1999), *renumbered as* ORS 659A.030 (2001), arising out of defendant's termination of plaintiff's employment. We view the record on summary judgment in the light most favorable to plaintiff. *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). We reverse and remand on the sex discrimination claim and otherwise affirm.

Plaintiff worked for defendant for 17 years as a parole and probation officer. The parties' contract allowed defendant to discipline plaintiff for "good cause," as defined by defendant's Personnel Rules Handbook (the handbook). By incorporating another provision from the handbook, the contract also required defendant to refrain from disclosing information of a personal nature about its employees unless the public interest required such disclosure.

In June 1998, plaintiff told her department head, Gonzales, that she had recently become involved in an intimate relationship with her former probationer, Dodge. Plaintiff's having an intimate relationship with a parolee or probationer under her supervision would have violated defendant's policy and would have been grounds for termination of plaintiff's employment. However, based on plaintiff's statement, Gonzales initially concluded that the relationship did not appear to violate defendant's policy because, at the time of the disclosure, Dodge was no longer under plaintiff's supervision.

In August 2000, Gonzales received information that plaintiff had engaged in an intimate relationship with a probationer while the probationer was under plaintiff's supervision. It was not common for defendant to assign an immediate supervisor to investigate such allegations. However, Gonzales assigned Nagel, plaintiff's immediate supervisor, to investigate the allegations against plaintiff, even though Gonzales knew that there had been problems in the working relationship between plaintiff and Nagel. On August 15, 2000, while the investigation was underway, defendant

placed plaintiff on paid administrative leave, and Nagel and an armed parole and probation officer escorted her out of the building in front of other employees and the general public. Nagel explained that the escort was necessary for safety reasons. At the time, plaintiff was very upset, but she voluntarily walked to her car.

In October 2000, Gonzales told plaintiff that she had been placed on administrative leave because she had engaged in an intimate relationship with a probationer, Dodge, while she was supervising him, that she had been dishonest by denying that the relationship had occurred, and that plaintiff had allowed Dodge, a convicted felon, to handle her service weapon. Plaintiff acknowledged that she had engaged in an intimate relationship with Dodge but denied that the relationship had occurred during the period in which she supervised him. Plaintiff also denied that Dodge had ever fired or "handled" a firearm in her presence. Rather, plaintiff stated that she had kept her weapon in her locker at work when Dodge was around.

Nagel issued a written report recommending that Gonzales conclude that plaintiff had violated defendant's policy governing parole and probation officer relationships with parolees or probationers under their supervision, that plaintiff had lied to Gonzales when she first informed Gonzales of her relationship with Dodge, and that plaintiff had allowed Dodge to handle her weapon. Gonzales concurred in Nagel's report, and she terminated plaintiff's employment on October 6, 2000. At the time Gonzales terminated plaintiff, defendant's personnel rules provided, in part:

> "Any action that is a direct hindrance to the effective performance of County functions, shall be considered good cause for disciplinary action. Such cause may also include misconduct, * * * malfeasance, giving of false information or withholding information * * * in response to inquiries from management, or violation of published departmental rules or these rules."

After receiving a copy of Nagel's report, plaintiff hired her own investigator to interview witnesses. Plaintiff's investigator spoke with Dodge, who stated that Nagel had threatened to arrest him if he did not "give [Nagel] what he needs."

Dodge also called another coworker of plaintiff and purported to retract all statements attributed to him in the report. Plaintiff's investigator concluded that Nagel had been biased against plaintiff in his investigation and that he had led witnesses to believe that plaintiff had acted unethically.

On October 6, 2000, Gonzales divulged the allegations that had been made against plaintiff to parole and probation officers at a staff meeting. On October 9, Gonzales announced at another staff meeting that plaintiff had been terminated because of "overwhelming evidence" that the previously divulged allegations were true. Shortly thereafter, the allegations were reported in newspapers and to the community at large in Douglas County.

In October 2000, plaintiff appealed the termination decision to defendant's Personnel Review Board (PRB). During the course of that proceeding, plaintiff disclosed that Dodge had, in fact, cleaned her service weapon. When asked why she had not previously disclosed that information, plaintiff stated, "They didn't ask me if I, if he cleaned it—did they, they asked me if uh, I allowed him to possess it." Plaintiff stated that she had been "real technical" during the investigation in denying that Dodge had handled her weapon and that she was not "giving them anything."

Defendant previously had employed Benefield, a male parole and probation officer, from 1995 to 1998. Benefield also was accused of having an improper relationship with a probationer whom he had supervised. Like plaintiff, Benefield was placed on administrative leave as a result of the allegations. However, when defendant placed Benefield on leave, it allowed him to leave the building without an escort and "without incident." In addition, Gonzales did not divulge the allegations against Benefield at staff meetings. When Benefield resigned, Gonzales filled out a form provided by the Department of Public Safety Standards and Training (DPSST) that did not include a box asking for a recommendation whether to revoke Benefield's DPSST certificate. In addition, Benefield stated that defendant offered to give him a positive recommendation to prospective employers.

After terminating plaintiff, Gonzales filled out a DPSST form that included a box asking for a recommendation whether to revoke plaintiff's DPSST certificate. Gonzales checked the box recommending revocation.

The PRB upheld plaintiff's termination. In January 2001, plaintiff appealed the PRB decision to defendant's Board of Commissioners. The board affirmed the PRB's decision. In September 2001, plaintiff filed this action.

In her second amended complaint, plaintiff alleged that defendant had breached the parties' employment contract or was promissorily estopped from terminating her. In particular, plaintiff alleged in those claims that the parties had an oral employment agreement under which defendant agreed that (1) it would discipline plaintiff only for "good cause" as defined in the handbook, and (2) defendant would not disclose information about plaintiff of a personal nature if the disclosure would constitute an unreasonable invasion of privacy unless the public interest required the disclosure. In a separate sex discrimination claim, plaintiff alleged that defendant had treated her less favorably than male coworkers in similar situations. In February 2003, defendant moved for summary judgment against each of plaintiff's claims. The trial court granted defendant's motion, and plaintiff appeals from the ensuing judgment dismissing the action.

In her first assignment of error, plaintiff asserts that the trial court erred in granting summary judgment on her breach of contract and promissory estoppel claims on the ground that an action for a writ of review afforded plaintiff her exclusive means of obtaining judicial review of defendant's administrative decisions. In so ruling, the trial court concluded that "[t]he issues [plaintiff] presented to the [PRB] and [the board] are the same issues she presents in her breach of contract claim." We review that ruling for errors of law. *See Shockey v. City of Portland*, 313 Or 414, 418-22, 837 P2d 505, *cert den*, 507 US 1017 (1992) (applying that standard of review to issues similar to the ones presented here).

ORS 34.020 provides that, with certain exceptions that do not apply here, "any party to any process or proceeding before or by any inferior court, officer, or tribunal may have the decision or determination thereof reviewed for

errors, as provided in ORS 34.010 to 34.100 [that is, by writ of review], *and not otherwise.*" (Emphasis added.) Where a plaintiff in a civil action seeks to enforce rights that arise from the terms of a contract, rather than from an extracontractual source, the action may be based on contract, even though it might also be subject to a writ of review proceeding. *Cloyd v. Lebanon School District 16C*, 161 Or App 572, 578, 985 P2d 232 (1999). But if the rights to be enforced have their source outside the contract, then writ of review is the sole remedy. *Id.* at 579.

In *Cloyd*, the plaintiff's agreement with the school districts that employed her provided that her employment could be terminated before the expiration of the employment agreement only with "good and just cause." *Id.* The agreement further gave the plaintiff the right "to a written statement of grounds for [the] proposed termination and, thereafter, [to] a due process hearing," including the right to be represented by retained counsel, to confront adverse witnesses, and to a written decision "describing [the districts'] findings and conclusions." *Id.* And, finally, the agreement explicitly stated that the provision for a "due process hearing" did not constitute "a waiver of any rights" that the plaintiff or the districts might have "to enforce this employment contract." *Id.* The employers did not assert that any authority, other than the contract, gave the plaintiff the rights that she asserted. We held that, "[w]hatever the precise nature and scope of the rights secured by the [parties' agreement]," the plaintiff "had them as a result of the agreement only, not as the result of any statute or employer rule. It follows that * * * she could seek to enforce those contractual rights through an action for the breach of the agreement." *Id.* at 580.

Defendant argues that *Cloyd* is distinguishable from the present case. Defendant relies, instead, on *Machunze v. Chemeketa Community College*, 106 Or App 707, 714, 810 P2d 406, *rev den*, 312 Or 16 (1991), where we held that, because the plaintiff chose an administrative hearing procedure to seek review of a disciplinary decision, "review of that decision could only be by writ of review." In *Machunze*, we relied on our earlier decision in *Spada v. Port of Portland*, 55 Or App 148, 637 P2d 229 (1981), where the plaintiffs brought

a contract action to recover the cost of removal of nursery stock from property purchased by the port. Before filing an action in circuit court, the plaintiffs submitted the issue for a decision by the port's executive director. There was no statutory requirement to submit the claim to an administrative hearing before the agency and, at the time of the administrative proceedings, there was no statutory provision for judicial review of the director's decision. In the later contract action, the plaintiffs sought to enforce the defendant's unilateral promise to pay a certain amount, the same issue that had been decided by the director. We held that, if the plaintiffs had not elected to use the administrative process, they might have had a right to bring an independent action for breach of contract. However, because the plaintiffs chose the administrative hearing procedure, we held that they could obtain judicial review of that decision only by means of a writ of review. *Id.* at 154.

Defendant argues that, like the plaintiffs in *Machunze* and *Spada*, plaintiff here was limited to a writ of review action as her exclusive remedy because she "appealed her termination and alleged treatment through [defendant's] administrative review process and received an adverse final decision." We disagree. In *Cloyd*, we stated:

"In *Machunze*, the plaintiff had *no* contractual right to a hearing. 106 Or App at 711. Therefore, he had no contract right to 'waive.' In *Spada*, the plaintiffs chose first to pursue an administrative remedy; when that failed, they sued for breach of contract. 55 Or App at 152-53. This court held that, by pursuing the administrative remedy first, the plaintiff had 'elected' that remedy and could not thereafter sue in contract. *Id.* at 154. *Spada* is therefore inapposite. The administrative remedy that the plaintiffs pursued there was unrelated to their contract and nothing in the contract permitted or required them to seek such a remedy. Thus, when they sought administrative review, rather than suing in contract, they had 'elected' to pursue a remedy other than a contractual one. Here, in contrast, and as demonstrated above, petitioner's rights to concur in the premature termination of the contract, to termination only on 'good and just cause,' and to a 'due process hearing' (as that term is defined in the agreement), are a result of the agreement itself. In seeking such a hearing, petitioner did not

eschew the agreement; she followed it. If she 'elected' any-thing here, then it was to pursue her contractual remedies. That choice, of course, is not inconsistent with her subse-quent contract complaint."

*Cloyd*, 161 Or App at 581-82 (emphasis in original). Here, as in *Cloyd*, plaintiff alleged that her rights to termination only for good cause and to have the circumstances attending her discipline treated confidentially arose from a contract. The fact that the contract incorporated provisions from defen-dant's handbook does not alter that circumstance. Accord-ingly, plaintiff did not, by pursuing her contractually con-ferred administrative remedies, waive the right to enforce those alleged contractual rights in the present action.

■　　Plaintiff next assigns error to the trial court's alter-native ground for granting summary judgment to defendant on the breach of contract and promissory estoppel claims relating to the termination of her employment, in which the court held that, "even under the facts as claimed by plaintiff," there is no genuine issue as to any material fact and there was "good cause" for her discharge as that term is defined by defendant's personnel rules.[1] The court reasoned:

> "Assuming that plaintiff did not lie about her relationship with Mr. Dodge while he was on her caseload, a fact found by the county commissioners, she was irresponsible in han-dling her weapon and leaving it in an area where it was accessible to Mr. Dodge who at the very least was a frequent visitor at plaintiff's residence. Despite plaintiff's attempts to split hairs or engage in technicalities, she was clearly untruthful during the investigation into the matter and there is no factual dispute presented as to that issue."

Again, we review that ruling for errors of law. *See Jones*, 325 Or at 408 (on review of summary judgment, we "view the evi-dence and all reasonable inferences that may be drawn from the evidence" in favor of the nonmoving party).

In this case, the "good cause" requirement arises from a provision in the handbook. Such a provision has con-tractual stature. *Simpson v. Western Graphics*, 293 Or 96,

---

[1] Although the doctrine of promissory estoppel is conceptually distinct from that of breach of contract, those differences are not pertinent to our analysis of the issue on summary judgment. Accordingly, we do not belabor them.

100, 643 P2d 1276 (1982). However, defendant notes that (1) the definition of "good cause" in the handbook is broad: "Any action that is a direct hindrance to the effective performance of County functions"; and (2) the handbook gives defendant "the exclusive right to determine what the facts are; whether discipline is warranted; and what disciplinary action or penalty should be imposed." According to defendant, the courts, therefore, lack authority to second-guess defendant's disciplinary decisions.

The foundation for defendant's argument is its understanding of the Supreme Court's decision in *Simpson*. In that case, the employees asserted that the employer had terminated them in violation of the just cause provisions of the employer's employee handbook. There were no individual agreements that established the duration of the employees' employment. The trial court refused to find whether the facts constituting just cause actually existed. Rather, that court held that it was necessary to find only that there was substantial evidence to support the employer's decision and that the employer had acted in good faith. It then determined that substantial evidence existed and entered judgment for the employer. 293 Or at 98-99.

On appeal, the Supreme Court affirmed. It held that the employee handbook restricted the employer's otherwise unlimited authority to terminate an employee at will. Under the handbook, the employer had to have just cause in order to terminate an employee. The handbook did not, however, limit the employer's right to determine whether the facts constituting just cause existed. That decision, therefore, was for the employer, not the courts. In reaching that conclusion, the court emphasized the unilateral nature of an employee handbook:

> "Although an employer's statement of employment policy has a degree of contractual effect, its terms are not necessarily to be construed in the same way as those of a negotiated labor contract. The handbook was not negotiated. It is a unilateral statement by the employer of self-imposed limitations upon its prerogatives. It was furnished to plaintiffs after they were hired and the evidence affords no inference that they accepted or continued in employment in reliance

upon its terms. In such a situation, the meaning intended by the drafter, the employer, is controlling * * *."

*Id.* at 100 (citation omitted). The court concluded that there was no reason to infer that the employer intended to surrender its power to determine whether the facts constituting cause existed, nor was there evidence of some other basis for concluding that it had done so. *Id.* at 100-01.

Plaintiff asserts that her submissions opposing summary judgment demonstrated that the parties entered into an oral agreement whereby defendant agreed to give up its prerogative to solely make the factual determinations about whether good cause existed to terminate plaintiff's employment. Assuming, without deciding, that plaintiff is correct, that argument is unavailing.

We conclude that plaintiff failed to establish the existence of a genuine issue of material fact as to whether defendant had good cause to terminate plaintiff's employment and whether defendant breached the confidentiality provisions of the parties' contract. As did the trial court in making that determination, we focus on plaintiff's version of the facts. We first consider the "gun cleaning" incident. When defendant terminated plaintiff's employment, it did so, in part, based on conflicting evidence about whether plaintiff let Dodge handle her service weapon. In the investigation, Dodge told Nagel that he had handled plaintiff's weapon. Plaintiff does not contend that, if that allegation were true, it would not furnish good cause for her termination. Rather, she asserts that the allegation is not true.

Plaintiff's factual and legal basis for that assertion has shifted over time. Before she was discharged, plaintiff merely denied that Dodge had ever handled a firearm in her presence. Later, though, in the hearing before the PRB and in this action, she admitted that Dodge had handled the gun. However, she claims (1) that she did not permit him to do so; instead, he cleaned the gun on his own initiative after she left it on her kitchen table while she was out of the house for about an hour and (2) the gun was not a firearm at that time because it was disassembled, and the magazine and ammunition were in the trunk of her car. Plaintiff also relies on authority to the effect that a disassembled weapon is not

always a firearm for the purpose of establishing the criminal offense of felon in possession of a firearm. However, that argument is unavailing because the existence of good cause in this case does not depend on whether the weapon was a "firearm" for that purpose when Dodge handled it.

As noted, during the investigation, plaintiff answered, "No, he did not," when Gonzales asked her whether Dodge ever handled or fired any firearm in her presence. In addition, plaintiff presented a written statement that asserted:

> "I did not allow Dodge to handle or fire my weapon. In fact, when I knew he was going to be around, I would leave my weapon at my office in my gun locker. There were times that I would lock my firearm in the trunk of my car. To my knowledge, Dodge did not have access to my car or drive my car with my firearm in the car."

As plaintiff's subsequent admission made clear, at worst, the statement that plaintiff would leave the weapon in her office or a gun locker when she knew that Dodge was going to be around, was categorically false, and, at best, each of her statements was deliberately evasive and misleading. Plaintiff made no distinction in her statements between the terms "firearm" and "weapon." Plaintiff's excuse for the "technical" nature of her statements was that "these people are after me," so "I'm not giving them anything."

As noted, the handbook provides that "withholding information * * * in response to inquiries from management, or violation of published departmental rules" is good cause for discipline. No reasonable factfinder could determine that the evasive and misleading information that plaintiff furnished in the investigation did not provide good cause for discipline.[2] Accordingly, the trial court did not err in granting summary judgment to defendant on plaintiff's claims for breach of contract and promissory estoppel based on defendant's termination of her employment.

---

[2] Plaintiff does not assert that, if her conduct furnished good cause for any discipline, it did not also provide good cause for her discharge. Accordingly, we do not consider that issue.

■    In her third assignment of error, plaintiff asserts that the trial court erred in granting summary judgment to defendant on the portions of her breach of contract and promissory estoppel claims alleging that defendant improperly disclosed confidential information about plaintiff. With respect to those portions of her claims, the evidence showed that Gonzales announced to her entire staff that there was "overwhelming" evidence of the allegations against plaintiff and that Gonzales had made the disclosure because rumors had generally "diminished morale in the department," and people had "taken sides."

For those portions of her claims, plaintiff primarily relies on a provision in the handbook, which, she asserts, was incorporated into the parties' contract. That provision states:

"3.2.2   The following records shall be considered confidential information:

"3.2.2.1   Information of a personal nature if the public disclosure thereof would constitute an unreasonable invasion of privacy unless the public interest, by clear and convincing evidence, requires disclosure in the particular instance. Such information shall include, but is not limited to, job applications (except for disclosure that is specifically authorized by the application form) employee performance evaluations and disciplinary records."

Plaintiff acknowledges that that provision, which pertains only to "records," does not literally apply to the oral disclosure of confidential information.[3] However, she argues that

---

[3] In support of that portion of her claim, plaintiff refers to the Oregon Public Records Law, in particular, ORS 192.502(2), which exempts from disclosure certain public records, including:

"Information of a personal nature such as but not limited to that kept in a personal, medical or similar file, if public disclosure would constitute an unreasonable invasion of privacy, unless the public interest by clear and convincing evidence requires disclosure in the particular instance. The party seeking disclosure shall have the burden of showing that public disclosure would not constitute an unreasonable invasion of privacy."

Because ORS 192.410(4) defines "public record" as a "writing," and plaintiff does not contend that defendant disclosed a public record, the Public Records Law does not apply to this case.

the "verbal disclosure of what cannot be disclosed in writing at the very least violates the duty of good faith and fair dealing that is implicit in every contract." Plaintiff also asserts that, based on the way that defendant handled previous disciplinary actions, including Benefield's, she reasonably expected that the investigation and disciplinary process were confidential.

■ The difficulty for plaintiff is that the provision on which she relies restricts the disclosure only of "records," not the oral communication of information. Nor does the implied duty of good faith and fair dealing assist plaintiff's argument, because that duty cannot expand the parties' substantive duties under a contract; rather, it relates to the performance of the contract. *See Zygar v. Johnson*, 169 Or App 638, 646, 10 P3d 326 (2000), *rev den*, 331 Or 584 (2001) (a party's duty of good faith in the performance of a contract cannot contradict an express contractual term nor otherwise provide a remedy for an unpleasantly motivated act that is expressly permitted by the contract). Thus, the duty of good faith and fair dealing—which serves to effectuate the objectively reasonable expectations of the parties—may be implied as to a disputed issue only if the parties have not agreed to an express term that governs that issue; indeed, the reasonable expectations of the parties are irrelevant if the parties have agreed to an express term governing the issue. *Tolbert v. First National Bank*, 312 Or 485, 492, 823 P2d 965 (1991); *OUS v. OPEU*, 185 Or App 506, 511, 60 P3d 567 (2002).

Moreover, the information that Gonzales disclosed was not "of a personal nature." Instead, the information related to plaintiff's qualifications to perform the job duties of a parole and probation officer. *Cf. City of Portland v. Anderson*, 163 Or App 550, 555-56, 988 P2d 402 (1999) (records pertaining to a police captain's off-duty sexual conduct were not of a "personal nature" under the Public Records Law because they bore on his qualification to serve in a position of public trust); *see also Oregonian Publishing v. Portland School Dist. No. 1J*, 144 Or App 180, 182-88, 925 P2d 591 (1996), *adh'd to as modified*, 152 Or App 135, 952 P2d 66 (1998), *aff'd on other grounds*, 329 Or 393, 987 P2d 480 (1999) (the "personal interest" exemption under the Public Records Law was inapplicable to a personnel investigation

into alleged employee theft and misuse of school property because the disclosure did not unreasonably invade the employee's privacy and the records did not constitute information of a personal nature). It follows that the trial court did not err in granting summary judgment to defendant on the portions of her breach of contract and promissory estoppel claims alleging that defendant improperly disclosed confidential information about plaintiff.[4]

■■ In her fourth assignment of error, plaintiff contends that the trial court erred in granting summary judgment to defendant on her sex discrimination claim under ORS 659.030(1).[5] In order to establish a *prima facie* case of discrimination based on disparate treatment, plaintiff was required to show that defendant treated her disparately in the terms or conditions of work because of her gender. *Durham v. City of Portland*, 181 Or App 409, 421-22, 45 P3d 998 (2002). The trial court granted summary judgment to defendant because it concluded that plaintiff failed to adduce evidence that similarly situated male employees were treated more favorably. Plaintiff asserts that defendant treated her differently from similarly situated males in two ways: (1) before her termination, she was escorted out of the building by an armed officer when she was placed on administrative leave, and (2) after her termination, Gonzales disclosed information about the circumstances of her discipline to department staff. Viewing the evidence in the light most favorable to plaintiff, we first review the evidence regarding defendant's treatment of Benefield, the primary male comparator whom she cites.

When confronted, Benefield admitted that he had had an inappropriate relationship with a female offender under his supervision and, based on that admission, Gonzales placed him on administrative leave. At that time, Gonzales required Benefield to turn in his identification,

---

[4] Again, for present purposes, the doctrinal differences between breach of contract and promissory estoppel claims do not require a different analysis for plaintiff's promissory estoppel claim. For both claims, plaintiff relies on the same provision of the handbook. By its terms, that provision did not include a promise that the "disciplinary process" would be kept confidential.

[5] That statute provided a civil action for persons aggrieved by certain specified unlawful employment practices.

keys, and ammunition. Gonzales stated that she was not concerned that Benefield would cause a disturbance or gain access to defendant's computer system because he was not physically present in the parole and probation department office and the building exit door was near the office in which he and Gonzales met.

After Gonzales placed Benefield on leave, she met with him near defendant's human resources office and told him that she would terminate him if he did not resign. At that point, Benefield resigned. After that meeting, another parole and probation officer escorted Benefield from the building. Gonzales testified that, because Benefield had resigned, there was no need to advise departmental staff of the results of a protracted investigation that was causing dissension among staff. In addition, because Benefield was not accused of dishonesty, Gonzales stated that it was unnecessary to remind staff of the necessity of complete honesty. However, Nagel acknowledged that everyone on staff knew about the allegations against Benefield and that people had taken sides over his situation.

Although the evidence showed differences between plaintiff's and Benefield's circumstances, they primarily stem from the fact that Benefield admitted the charges against him and chose to resign. No evidence in the record conclusively explains why those differences justified the differences in treatment accorded plaintiff and Benefield. For example, there was no evidence that, merely because plaintiff denied the accusations against her, she posed such a threat as to require an armed escort from the building when she was placed on administrative leave. Nor was there any dispositive evidence explaining why departmental staff were not informed of the circumstances and outcome of the investigation against Benefield, given that it also would have provided an opportunity to address dissension among staff and to reinforce defendant's policy against relationships between parole and probation officers and offenders under their supervision. Nor does the fact that defendant used different DPSST forms to report Benefield's resignation and plaintiff's termination fully account for defendant's willingness to give Benefield a positive job recommendation, whereas defendant recommended the revocation of plaintiff's DPSST certificate.

It may well be, as defendant asserts, that a fact-finder would determine that differences in Benefield's and plaintiff's circumstances justified the different treatment each received. However, plaintiff's burden in opposing a motion for summary judgment based on the evidentiary sufficiency of her discrimination claim is " 'so minimal that it is virtually impervious [to the motion].' " *Hardie v. Legacy Health System*, 167 Or App 425, 437, 6 P3d 531 (2000), *rev den*, 332 Or 656 (2001) (quoting *Callan v. Confed. of Oreg. Sch. Adm.*, 79 Or App 73, 78 n 3, 717 P2d 1252 (1986)). Based on the summary judgment record, we conclude that a reasonable factfinder could determine that the treatment to which defendant subjected plaintiff was based on her gender, not other circumstances. Accordingly, the trial court erred in granting summary judgment to defendant on plaintiff's sex discrimination claim.

We reject without discussion plaintiff's fifth assignment of error, in which she asserts that the trial court erred in striking, on various grounds, certain of her summary judgment submissions.

Judgment on claim for sex discrimination reversed; otherwise affirmed.