Argued and submitted August 13, 2013, affirmed May 20, petition for review allowed November 4, 2015 (358 Or 248)

AMERICAN CIVIL LIBERTIES UNION
OF OREGON, INC.,
an Oregon non-profit public benefit corporation,
*Plaintiff-Appellant,*

*v.*

CITY OF EUGENE, OREGON,
a municipal corporation,
*Defendant-Respondent,*

*and*

CIVILIAN REVIEW BOARD
OF THE CITY OF EUGENE, OREGON,
*Defendant.*

Lane County Circuit Court
161024398; A150403

350 P3d 507

Steven M. Wilker argued the cause for appellant. With him on the briefs were Kevin Diaz and Tonkon Torp LLP.

Jerome Lidz argued the cause for respondent. With him on the brief was Glenn Klein.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

**NAKAMOTO, J.**

This appeal involves a public records request under Oregon's Public Records Law, ORS 192.410 - 192.505. Under that law, "[e]very person has a right to inspect any public record of a public body in this state," except as provided by the express statutory exemptions in ORS 192.501 to 192.505. ORS 192.420(1). Using the Public Records Law, plaintiff American Civil Liberties Union of Oregon, Inc. (ACLU) requested public records from defendant City of Eugene[1] relating to the Civilian Review Board's (CRB) review of an internal investigation of police misconduct. The city declined to release the requested records, relying on ORS 181.854(3), which prohibits a public body from disclosing information about a personnel investigation of a public safety employee if the investigation does not result in discipline.[2] ACLU filed suit in Lane County Circuit Court, arguing that, under ORS 181.854(4), subsection (3) of that statute does not apply when the public interest requires disclosure or when disclosure is necessary for an investigation by a citizen review body. Following a bench trial, the trial court declined to order disclosure. ACLU appeals, assigning error to, among other things, the trial court's determination that the public interest did not require disclosure of the requested documents. We affirm.

ACLU requests that we review the record *de novo*.[3] However, because this is not an exceptional case, we decline to exercise our discretion to do so. ORS 19.415(3) (in appeals of equitable actions other than those involving the termination of parental rights, we may, in our discretion, "try the cause anew upon the record or make one or more factual findings anew upon the record"); ORAP 5.40(8)(c) (stating

---

[1] Defendant Civilian Review Board of the City of Eugene, Oregon (CRB) was dismissed by agreement of the parties after ACLU had filed its complaint. The CRB is not a party to this appeal.

[2] Under ORS 192.502(9)(a), which is one of the statutory exemptions in the Public Records Law, a public body is not required to disclose records that it is prohibited from disclosing under Oregon Law.

[3] Historically, we have treated cases arising out of the Public Records Law as equitable actions and, therefore, have considered our standard of review to be governed by ORS 19.415(3). *See, e.g.*, *In Defense of Animals v. OHSU*, 199 Or App 160, 162, 112 P3d 336 (2005) (citing ORS 19.415(3) as source of standard of review). We continue to do so in this case.

that we exercise that discretion "only in exceptional cases"). Bearing in mind that the legislature intended a uniform application of the exemptions in the Public Records Law, we conclude that our standard of review in this case is for legal error. *See Guard Publishing Co. v. Lane County School Dist.*, 310 Or 32, 37, 791 P2d 854 (1990) (stating that, "[t]he legislative history of the [Public Records Law] shows that the legislature intended that [the statutes] be applied simply, quickly and *with a large measure of uniformity*" (emphasis added)). Accordingly, we accept the trial court's findings of historical fact if those findings are supported by any evidence in the record, and we review the trial court's conclusions for legal error. We state the facts consistently with that standard.

The incident that was the impetus of ACLU's record request was the May 2008 arrest of college student Ian Van Ornum at a pesticides protest in downtown Eugene. Police officers employed by the city used Taser stun guns in the process of arresting Van Ornum and others. Van Ornum was charged with resisting arrest and disorderly conduct and was later found guilty of those charges in a jury trial. Following the incident, Van Ornum and other individuals filed complaints with the city alleging that the officers had used excessive force in their arrest of the protesters. In response to those complaints, the Internal Affairs division of the Eugene Police Department initiated an investigation of the incident. Upon completion of its investigation, the Internal Affairs division transmitted a copy of its investigation file to the Police Chief, the Police Auditor, and the CRB.

The CRB had designated the case a "Community Impact Case," meaning that the CRB would review the city's proposed adjudication of the case before that adjudication became final, allowing the CRB to require the city to reopen the investigation if it found that the investigation was inadequate or incomplete, or if it determined that the adjudication reached by the city was not supported by substantial evidence. Eugene Code (EC) 2.244(4).

After reviewing the investigation file, the Police Chief made preliminary findings that the officers had acted

within police policy during the incident. The CRB thereafter held a public meeting to consider and vote on the chief's preliminary findings. During that meeting, the CRB members discussed their views of the incident, the investigation, and the evidence gathered, including discussions regarding witness statements. The CRB unanimously concurred with all of the chief's findings except for the finding relating to one officer's use of a Taser "while [e]ffecting the arrest of Mr. Van Ornum and defending himself against Mr. Farley[,]" with which the CRB concurred by a 4-2 vote. Following the CRB's review, the chief confirmed his preliminary findings and made a final adjudication that the officers' conduct was within policy and that the complaints were unfounded. As a result, the officers were not disciplined.

ACLU thereafter requested from the city "all documents used by the Civilian Review Board in reviewing and deciding the May 30, 2008, Ian Van Ornum Community Impact Case." (Boldface omitted.) As noted above, the city denied that request, citing the prohibition against disclosure in ORS 181.854(3).[4] ACLU exercised its statutory right to obtain review by the Lane County District Attorney. ORS 192.450 - 192.460. During the District Attorney's consideration of that petition, the city released some of the records it had withheld, but continued to assert that the remaining portions of the Internal Affairs investigative file were not subject to disclosure, relying on ORS 181.854. The District Attorney declined to order the city to disclose those records, and ACLU filed this action in the circuit court, seeking an order and judgment requiring disclosure of the records.

---

[4] As relevant here, ORS 181.854 provides:

"(3) A public body may not disclose information about a personnel investigation of a public safety employee of the public body if the investigation does not result in discipline of the employee.

"(4) Subsection (3) of this section does not apply:

"(a) When the public interest requires disclosure of the information.

"(b) When the employee consents to disclosure in writing.

"(c) When disclosure is necessary for an investigation by the public body, the Department of Public Safety Standards and Training or a citizen review body designated by the public body.

"(d) When the public body determines that nondisclosure of the information would adversely affect the confidence of the public in the public body."

Before trial, the parties stipulated to facts that established that the requested records fell within the terms of ORS 181.854(3), and therefore, were exempt from disclosure under the Public Records Law. *See* ORS 192.502(9)(a) (exempting from disclosure "[p]ublic records or information the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under Oregon law"). The disputed issues at trial were whether certain statutory exceptions to that prohibition applied, thereby requiring the release of the records. Also at issue was which party bore the burden of persuasion with respect to establishing those exceptions.

ACLU's primary position at trial was that the public interest required disclosure of the internal investigation file under ORS 181.854(4)(a). ACLU argued that the Van Ornum incident was a high profile case involving allegations that police officers had used excessive force. It asserted that the CRB was created by ballot measure to create a watchdog to review allegations of police misconduct and that the Public Records Law, and the Oregon cases that have applied it, recognize that there is a public interest in government transparency. Furthermore, ACLU emphasized that this was the first time that the CRB had designated a case a "community impact case," which increased the CRB's ability to affect the outcome of the complaints. According to ACLU, the public interest in transparency of government would be served by the release of the records in this case because it would allow the public to determine whether the CRB was "doing its job."

In support of its position, ACLU introduced into evidence several newspaper articles that discussed the incident and the fact that the CRB would review the investigation, as well as portions of the transcript from Van Ornum's criminal trial and the minutes of the CRB proceeding. ACLU also relied on the following stipulated facts:

"3. The CRB was 'established *** to increase the transparency of, and public confidence in, the police complaint process. In general, the civilian review board shall evaluate the work of the independent police auditor, and may review completed complaint investigations involving

sworn police employees to provide comment, from a civilian perspective, about whether the complaint was handled fairly and with due diligence.' Eugene City Code § 2.240(1).

"4. The CRB was 'intended [to] provide a system of independent oversight of the police complaint process and implement section 15-A of the Eugene Charter of 2002 as adopted by the city electorate on November 8, 2005 [and to] serve as an advisory body to the city council.' Eugene City Code § 2.240(2) and (4)."

(Ellipses and brackets in original.) ACLU also introduced a declaration from its executive director, David Fidanque, in which he explained that the CRB was created because there were "issues of concern regarding allegations of police misconduct" and that the CRB "was given unique authority to oversee and make recommendations concerning allegations of police misconduct in dealings with the public."

Fidanque also testified at the trial. He explained that ACLU was interested in reviewing the records because of its ongoing concern "about the interaction between the operation of the independent police auditor and Civilian Review Board *vis-à-vis* the police department and the Internal Affairs office, and the chief as well." Fidanque testified that ACLU was concerned about the fact that, in reviewing the Van Ornum case, some members of the CRB indicated that they had discounted certain witness statements from people who were participating in the protest in favor of other witness accounts, despite the fact that the discounted witnesses were closer in proximity to the arrest. Fidanque said that ACLU was interested in reviewing the witness interviews to see if the CRB was doing its due diligence in reviewing that material, particularly given the disagreement among the review board members based on those witness statements. When asked by the trial court to define the public interest in question in this case, Fidanque replied that

"the public interest is to help the public understand whether the system they created in order to provide independent oversight of the police department in police misconduct allegation cases is operating as intended * * *.

"So that, just to put that in plain English, is the review board acting in the way that the voters intended when they created it?"

ACLU also argued that, because the prohibition on disclosure in ORS 181.854(3) does not apply when "disclosure is necessary for an investigation by * * * a citizen review body designated by the public body," ORS 181.854(4)(c), that prohibition did not apply to the information sought in this action because the city had disclosed the records to the CRB. With respect to the burden of persuasion, ACLU argued that, under the Public Records Law, the public body has the burden "to sustain its action" in not disclosing public records, citing ORS 192.490(1) ("The court shall determine the matter de novo and the burden is on the public body to sustain its action."). As a result, ACLU argued that the city bore the burden of establishing both that an exemption to disclosure applied and that the exceptions to that exemption did not apply.

The city took the position that, if the court were to apply the test advanced by ACLU, namely that the public interest requires disclosure whenever the public needs help in understanding whether the system it created is operating as it intended, then the exception in ORS 181.854(4)(a) would swallow the rule in ORS 181.854(3): the result would be that disclosure would be the rule and not the exception, which is contrary to the statutory mandate in ORS 181.854. The city also argued that the exceptions in ORS 181.854(4) exist independently of one another and that, accordingly, the city's release of the information to the CRB did not mean that the city could release the same information to ACLU absent some other exception. Finally, with regard to the burden of persuasion, the city argued that, although it agreed with ACLU that the city bore the initial burden of establishing that an exemption applied, once that showing had been made, the burden shifted to the requesting party to establish an exception to that exemption.

With respect to the burden of persuasion, the trial court agreed with the city. The court held that, once the city had established that the records were exempt under ORS 192.502(9)(a) *vis-à-vis* ORS 181.854(3), the burden

shifted to ACLU to establish that an exception to that exemption applied. As to the merits, the trial court viewed the requested records *in camera*,[5] and held that, in this case, the public interest did not require disclosure of the requested records. The trial court explained that the evidence presented to it suggested that there were two, competing public interests in this case. The first was the public interest in "ensuring appropriate use of force and, in particular, Tasers by law enforcement." The second was the "public interest in having a safe, high quality police department *** that can effectively review its own actions and provide discipline, evaluation, and training for its officers." The court found that the existence of the CRB was evidence of those two competing interests and that the CRB was created to balance and safeguard "the public interest in competition here." The court noted that the exception in ORS 181.854(4)(c), which allows public bodies to release the kind of information involved in this case to a citizen review body, such as the CRB, further indicates that the CRB is in place to balance those interests:

"ORS [181].854(4)(c) carves out a narrow exception that allows disclosure to the [CRB] of records they need to do just that. That provision was created to act as a waiver of confidentiality when a [CRB] is involved. It was created to extend that confidentiality so as to allow the review or the oversight that that body provides, so to allow oversight while protecting confidentiality and therein lies the balance."

Thus, the court determined that, with regard to the public interest in appropriate use of force by police, disclosure was not required because the CRB system provided oversight while maintaining confidentiality under the statute.

Next, the court rejected ACLU's argument that the public's interest in reviewing the work of the CRB required disclosure of the records in this case:

"The ACLU was instrumental in, according to Mr. Fidanque's testimony, and likely should be applauded for its role in creating the [CRB] in order to have that oversight here in Eugene, but I don't think the evidence has

---

[5] The disputed records were also made a part of the record on appeal.

shown in this case that the public interest now requires disclosure of the internal review records that the [CRB] reviewed in order to now oversee what the [CRB] did.

"So sort of that riddle of finality, how much is enough? When is enough enough? So do we keep—do we set up review boards and then seek review of their work and then keep going on? Sort of like the *Cat in the Hat* stories. Every time the cat takes his hat off, another cat pops out. And when does—when does it end?

"Disclosure at this juncture to review the review board, *** I find is not required based upon the evidence presented, and, thus, the ACLU, as plaintiff in this case, has failed to meet its burden of establishing that the exception applies."

The court then stated that, even if the burden had remained on the city, it still would find that the evidence supports nondisclosure, indicating that, given its findings regarding the CRB's function and the statutory scheme, additional evidence from the city would not have affected the outcome of the case. In other words, the court determined that, as a matter of law, the balance of the competing interests was struck in favor of nondisclosure. Finally, the court indicated that it had reviewed the requested records *in camera* and noted that "there was nothing in those records that caused me to conclude that the public interest would require *** disclosure of those records in this case." The court subsequently entered a general judgment in favor of the city, consistent with its ruling.

On appeal, ACLU assigns error to (1) the trial court's ruling that ACLU bore the burden of establishing an exception to the exemption and (2) the court's ruling that the public interest exception in ORS 181.854(4)(a) did not apply.[6] We need not decide ACLU's first assignment of error, because the trial court stated that, even if the burden had remained on the city, the court still would have concluded that the evidence supported nondisclosure of the records.

---

[6] ACLU also assigns error to the trial court's ruling that the city's provision of the records to the CRB did not eliminate the exemption from disclosure under ORS 181.854(3). We reject that assignment without discussion.

We move then, to ACLU's remaining assignment of error, in which it argues that the trial court erred in determining that the public interest did not require disclosure of the records under ORS 181.854(4)(a). In that assignment, ACLU makes two primary arguments. In essence, the first argument is that, as a matter of law, the public interest required disclosure of the records in this case. In regard to that argument, ACLU largely renews its contentions from trial, including its argument that the public needs the requested records in order to "better understand the circumstances surrounding the use of less lethal weapons by the Eugene Police and the process used to ensure accountability of the involved officers." Because the Van Ornum case was high-profile and it was the CRB's first community impact case, which increased the CRB's role in reviewing the case, ACLU contends that the effectiveness of the CRB became a matter of public interest. ACLU argues that there was no countervailing interest in employee confidentiality because the identities of the officers involved were already publicly known. ACLU contends that the city did not offer any evidence or argument regarding countervailing interests in favor of confidentiality, but rather asserted that ORS 181.854(3) by itself required nondisclosure.

ACLU's second argument is that the trial court's conclusion that "there was a competing public interest in a secret disciplinary system" and its "apparent conclusion that the creation and operation of the CRB militated against disclosure" were not supported by any evidence, and therefore were incorrect as a matter of law.

In response, the city concedes that there is "a public interest in information that helps the public evaluate how well the CRB is performing its work or whether the Eugene Police Department uses Tasers appropriately." The city argues, however, that, in this case, there was sufficient transparency in the police complaint process and the investigation such that the public interest does not *require* release of records that, as a general rule, are prohibited from being released under ORS 181.854(3). The city notes that the CRB was created to increase the transparency of the process that the city uses to investigate and resolve complaints against police employees:

"What once was a completely internal, confidential pro-
cess is now reviewed by the police auditor and, in selected
cases, by the CRB and then discussed in detail in a public
meeting."

In the city's view, then, "[n]o one who observed the CRB's
lengthy discussions of the Van Ornum arrest, the officer's
use of Tasers and the police department's internal inves-
tigation report on the arrest could reasonably argue that
the CRB's review did not significantly enhance the trans-
parency of the police complaint process and the specific
investigation at issue." Because the trial court's decision is
supported by evidence and is consistent with the statutory
policy expressed in ORS 181.854(3) of generally protect-
ing the confidentiality of personnel investigations of public
safety officers that do not result in discipline, the city argues
that we should affirm the trial court's decision. For the rea-
sons below, we agree with the city.

This is the first Oregon appellate case to review
a trial court's application of the public-interest exception
in ORS 181.854(4)(a). However, a similar public-interest
exception exists in another exemption under the Public
Records Law, ORS 192.501 ("The following public records
are exempt from disclosure under ORS 192.410 to 192.505
unless the public interest requires disclosure in the particu-
lar instance[.]"). The parties do not argue, nor do we think,
that the analysis of the public-interest exception in ORS
181.854(4)(a) should differ from the approach we have used
in analyzing the public-interest exception in ORS 192.501.
Accordingly, we rely on cases applying that statute in set-
ting out the legal rules that apply to this case.

In those cases, we have said that, to determine
whether the public interest requires disclosure, a court must
balance the public's interest in disclosure against the pub-
lic body's interest in nondisclosure, with the presumption in
favor of disclosure. *See In Defense of Animals v. OHSU*, 199
Or App 160, 175, 112 P3d 336 (2005); *Springfield School Dist.
#19 v. Guard Publishing Co.*, 156 Or App 176, 179, 967 P2d
510 (1998); *see also Turner v. Reed*, 22 Or App 177, 187, 538
P2d 373 (1975) (stating that "the policy that permeates the
disclosure statutes and legislative history is that disclosure

decisions should be based on balancing those public interests that favor disclosure of governmental records against those public interests that favor governmental confidentiality, with the presumption always being in favor of disclosure"). "The public's interest in disclosure encompasses the public's interest in information about the manner in which public business is conducted * * * and the right of the public to monitor what * * * appointed officials are doing on the job[.]" *In Defense of Animals*, 199 Or App at 175-76 (citations and internal quotation marks omitted; second ellipses in original); *see also City of Portland v. Anderson*, 163 Or App 550, 554, 988 P2d 402 (1999) (stating that the public had a legitimate interest in confirming a high-ranking police officer's integrity and his ability to enforce the law evenhandedly); *Oregonian Publishing v. Portland School Dist. No. 1J*, 144 Or App 180, 187, 925 P2d 591 (1996), *adh'd to as modified on recons*, 152 Or App 135, 952 P2d 66 (1998), *aff'd*, 329 Or 393, 987 P2d 480 (1999) (stating that the alleged misuse and theft of public property by public employees was a matter of "legitimate" and "significant" public interest). "Evidence of the purpose for which the requestor is seeking the records may be relevant to the question whether the public interest requires disclosure." *In Defense of Animals*, 199 Or App at 176. Thus, as in the cases involving the applicability of the public-interest exception in ORS 192.501, we conclude that, when a trial court is analyzing whether the public-interest exception in ORS 181.854(4)(a) applies, the court must balance the public interest in disclosure against the public body's interest in nondisclosure, with the presumption in favor of disclosure.

That was the approach taken by the trial court in this case. The court identified two competing interests: the public's interest in ensuring that police officers are using appropriate force in their interactions with the public and the public interest in having a police force that can effectively review its own actions and provide discipline and training for its officers. It then determined that the CRB was created to balance those interests—to allow for oversight of police misconduct while maintaining confidentiality of the police's internal investigation of complaints against its officers. After reviewing the requested records, the

court rejected ACLU's argument that the public interest in transparency of the CRB's work required disclosure of the records, concluding that review of the CRB was not required in this case based on the evidence presented. Based on those findings, and upon reviewing the records at issue, the court concluded that the public interest did not require disclosure of the records.

Contrary to ACLU's position on appeal, we conclude that there was evidence to support the trial court's findings. The parties stipulated to the fact that the CRB was "established * * * to increase the transparency of, and public confidence in, the police complaint process" and that the CRB "may review completed complaint investigations involving sworn police employees to provide comment, from a civilian perspective, about whether the complaint was handled fairly and with due diligence." (Ellipses in original.) The parties also stipulated that the CRB was "intended [to] provide a system of independent oversight of the police complaint process." (Brackets in original.) Additionally, ACLU's executive director confirmed that the CRB was created because there were "issues of concern regarding allegations of police misconduct" and that the CRB "was given unique authority to oversee and make recommendations concerning allegations of police misconduct in dealings with the public."

Also in evidence was the CRB's 2009 Annual Report, in which the CRB confirmed that one of its primary goals is to "increase transparency and public confidence in the police complaint process." The report also said of the Van Ornum case that the public meeting "provided a valuable and unique opportunity for the public to learn more about the events leading to the complaints, and how the complaints were investigated by the police department." The CRB also stated that the CRB's review of other closed cases in open meetings afforded the community "the opportunity to learn more about the complaint process, and to hear those complaints discussed openly and critically."

That evidence is sufficient to support the trial court's findings that there were competing public interests in this case—the interest in ensuring appropriate use of force by police and the interest in having a police department that

can effectively review its own actions and provide officer discipline, evaluation, and training. That evidence also supports the court's finding that the CRB was created to safeguard and balance those interests.

As the trial court indicated, those findings make sense in light of the provisions governing the CRB's review in the Eugene Code and the statutory scheme in ORS 181.854. The Eugene Code provides that, when the CRB selects a case for review, including in a "community impact case," all materials concerning the case are to be provided to the CRB members "for their confidential review." EC 2.244(2)(b); EC 2.244(4). Furthermore, in cases like this, where the internal investigation did not result in discipline, ORS 181.854(4)(c) provides that the public body can release information to the CRB that it might otherwise be prohibited from disclosing. *See* ORS 181.854(3) (stating that a public body is prohibited from releasing information about a personnel investigation of a public safety officer if the investigation did not result in discipline of the employee); ORS 181.854(4)(c) (providing that the prohibition in subsection (3) does not apply when "disclosure is necessary for an investigation by * * * a citizen review body designated by the public body"). That statutory scheme allows the CRB to review internal investigations of police misconduct that otherwise would remain confidential and internal.

To the extent that ACLU is arguing that, even if supported by evidence in the record, those findings could not support the court's conclusion that the public interest did not require disclosure, we disagree. Our case law provides that a determination of whether the public interest requires disclosure of otherwise exempt public records requires the trial court to balance the public interest in disclosure against the public body's interest in confidentiality. The trial court identified two competing interests and determined that the CRB was created to balance those interests.

Furthermore, we agree with the city that the mere existence of a public interest in government transparency is insufficient to warrant release of the kinds of records protected by ORS 181.854(3). Under that statute, the legislature has expressed a policy decision that, as a general rule,

the records in this case be kept confidential. The public-interest exception to that general rule in ORS 181.854(4)(a) allows for the release of those records only when the public interest *requires* disclosure. Here, the court could reasonably determine that ACLU failed to demonstrate that the public's interest in transparency required release of the records. The evidence demonstrated that the CRB extensively reviewed the investigation in a public forum, in which they discussed the police policies at issue, witness statements of the incident, the nature of the investigation, and their own conclusions regarding the chief's findings. After its *in camera* review of the personnel investigation records, the court concluded that the public interest did not require disclosure of the records so that the public could see the normally confidential material considered by the CRB and could, in essence, come to their own conclusions about the propriety of the police chief's handling of the matter and the CRB's review of the Van Ornum case. Given the evidence presented, the court did not err in concluding that the public interest did not require disclosure.

Affirmed.