Argued and submitted February 1, affirmed June 1, 2005

CITY OF PORTLAND,
an Oregon municipal corporation,
*Appellant,*

*v.*

OREGONIAN PUBLISHING COMPANY,
*Respondent.*

0310-11712; A124262

112 P3d 457

Harry Auerbach argued the cause for appellant. On the brief was Tracy Pool Reeve.

Charles F. Hinkle argued the cause and filed the brief for respondent.

Before Wollheim, Presiding Judge, and Edmonds* and Schuman, Judges.

SCHUMAN, J.

---

* Edmonds, J., *vice* Ceniceros, S. J.

**SCHUMAN, J.**

The Circuit Court of Multnomah County, affirming an order of the county's district attorney, ordered the City of Portland to produce certain documents relevant to the investigation and discipline of a police officer who killed a civilian during a traffic stop. The city argues that the benefit flowing to the public from nondisclosure—namely, that public employees will be more likely to evaluate their supervisors, subordinates, and colleagues with candor if they know the evaluation will not be made public—clearly outweighs the benefit flowing to the public from disclosure itself. ORS 192.502(1). We disagree with the city, and therefore we affirm.

The following facts were included in material that has already been disclosed to the public, and they are not disputed in this appeal. On May 5, 2003, Portland Police Officer Bean made a traffic stop of a car carrying a driver and two passengers. One passenger, Kendra James, was riding in the back seat. When Bean discovered that the driver could not produce a license and that both passengers had outstanding arrest warrants, he decided to take all three occupants into custody. Officer McCollister, the police officer whose disciplinary investigation generated the documents at issue in this case, and another officer answered Bean's call for assistance. After the driver was taken into custody, Bean attempted to arrest James. She locked the door and refused to get out of the car. When Bean tried to reach through an open window to unlock the door, James climbed from the back seat into the front seat and turned on the ignition. All three officers ran toward the driver's door. McCollister arrived first. As he tried to pull James out, he leaned into the car, putting most of his body weight inside.

James struggled. McCollister attempted to subdue her with pepper spray, but either the cannister malfunctioned or he did not find the trigger. He then tried to gain control of her with a "hair hold," but that tactic failed because James was wearing a wig-like hair weave that came off in McCollister's hand. At that point, James shifted the car into gear and started to drive away. Because of his position halfway inside the car, McCollister believed that, unless he could

stop the car, he would fall out and be either dragged or run over. He unholstered his gun and ordered James to turn off the ignition. When James did not comply, McCollister then shot her one time. McCollister then fell out of the car unhurt. When the car stopped a few yards away, the officers removed James, laid her on the pavement, and handcuffed her. She died shortly thereafter.

An internal Portland Police Bureau investigation of McCollister ensued, resulting in the imposition of a disciplinary sanction: 900 hours unpaid leave. After the city disclosed the contents of the letter from then Chief of Police Mark Kroeker to McCollister informing him of the sanction, the Oregonian Publishing Company (the *Oregonian*), invoking the Oregon Public Records Law, ORS 192.410 to 192.505, formally requested that the City of Portland produce other documents related to the shooting. Specifically, the *Oregonian* requested "the documents that fill the gap between the criminal investigation and the disciplinary letter to McCollister." The city refused, and the *Oregonian* exercised its statutory right to obtain review by the Multnomah County District Attorney. ORS 192.450 - 192.460. District Attorney Schrunk issued a letter ordering the city to produce the requested records with a few specified redactions. The city then filed this action in Multnomah County Circuit Court, *id.*, seeking a declaration that the city was not required to disclose the documents. Both parties moved for summary judgment. The court granted the *Oregonian*'s and denied the city's. The city appeals.

■ Under ORS 192.420(1), "Every person has a right to inspect any public record of a public body in this state, except as otherwise expressly provided by ORS 192.501 to 192.505." The city argues that it need not disclose the documents at issue in this case because of the exemption in ORS 192.502(1):

> "Communications within a public body or between public bodies of an advisory nature to the extent that they cover other than purely factual materials and are preliminary to any final agency determination of policy or action. This exemption shall not apply unless the public body shows

that in the particular instance the public interest in encouraging frank communication between officials and employees of public bodies clearly outweighs the public interest in disclosure."[1]

When a public body withholds public records from disclosure, that body carries the burden of sustaining that action on appeal. ORS 192.490(1); *Kluge v. Oregon State Bar*, 172 Or App 452, 455, 19 P3d 938 (2001). Therefore, the city has the burden in this case.

■■     That burden is daunting. Oregon has a "strong and enduring policy that public records and governmental activities be open to the public," *Jordan v. MVD*, 308 Or 433, 438, 781 P2d 1203 (1989), a policy embodied in a statutory presumption that documents will be disclosed to the public. ORS 192.420. Exemptions from disclosure are to be narrowly construed. *Oregonian Publishing v. Portland School Dist. No. 1J*, 144 Or App 180, 184, 925 P2d 591 (1996), *aff'd on other grounds*, 329 Or 393, 987 P2d 480 (1999). Further, the exemption at issue in this case does not impose an evenly weighted balancing test; the city must prove that the public interest in nondisclosure "clearly" outweighs the interest in disclosure.

The city relies primarily on the affidavit of the Portland Chief of Police, Derrick Foxworth,[2] in which he makes the following argument:

---

[1] In its petition to the district attorney and in its complaint in circuit court, the city also claimed exemptions under ORS 192.501(12) and ORS 181.854. The former exempts "[a] personnel discipline action, or materials or documents supporting that action" unless the public interest requires disclosure in the particular instance. The latter prohibits disclosure of "information about a personnel investigation of a public safety employee * * * if the investigation does not result in discipline of the employee." In its counterclaim in circuit court, the *Oregonian* sought disclosure of the requested documents and it renewed that request in its motion for summary judgment without reference to particular statutes. On appeal, the city assigns error only to the trial court's conclusion "that the City failed to demonstrate that, under ORS 192.502(1), in this instance, the public interest in encouraging frank communication * * * outweighs the public interest in disclosure of the records sought by *Oregonian*." Therefore, this appeal raises no issue regarding ORS 192.501(12) or ORS 181.854.

[2] At the time of the incident and investigation, Foxworth was Assistant Chief of Police. He was a participant in the review of McCollister and his voting log is one of the documents the *Oregonian* wants the city to disclose.

"I strongly believe that in order to encourage greater candor and critical self-evaluation, Bureau members need to feel comfortable that honest, candid assessments will be used solely to improve the performance of a particular employee (through disciplinary action should that be necessary) or to assist in improving the performance of the Bureau as a whole. In my opinion, public disclosure of records of the type at issue in this case would have a chilling effect on the free flow of frank, uninhibited advice and self-critical observations within the Bureau."

In addition, Foxworth's affidavit cites a report by the Police Assessment Resource Commission (PARC) concluding that there was anecdotal evidence that Bureau members were "hesitant to be critical" in after action reports and that "[p]eople are afraid to ask hard questions. People are afraid to hurt feelings."

Although we do not disagree that most people may be more willing to make candid statements when they know the statements will remain confidential, we are unpersuaded that, in this case, the benefits of confidentiality clearly outweigh the benefits of disclosure. First, we observe generally that, although people may be more candid when they know that their statements will not be disclosed to the public and, in particular, to the people about whom the statements are made, they are also more likely to be vindictive, careless, or speculative—and therefore unreliable.

Second, and more importantly, like the district attorney and the trial court, we have reviewed the requested documents *in camera* and find that they contain nothing that could cause a chilling effect of such magnitude as to outweigh the benefit to be reaped by allowing the public to determine whether a full, frank, and thorough investigation of this highly inflammatory and widely reported incident occurred. Because our decision in this case may not be the last word, we will not moot the potential for a meaningful Supreme Court review by disclosing the contents of the documents. We can, however, describe them generally.

They consist of three items: an "after action memorandum" from Officer McCollister's supervisor, Commander Bret Smith, addressed to then Assistant Chief Foxworth;

a "confidential memorandum" from the "Review Level Committee" containing recommendations to Chief Kroeker; and logs kept by the Review Level Committee reflecting how each member voted on questions relating to whether McCollister violated Police Bureau procedures and what his sanction should be. We describe each in turn.

Smith, Commander of the North Precinct, submitted a lengthy after action memorandum to Foxworth. It includes an overview of the goals of police missions and the procedures used to complete them; a step-by-step analysis of the James shooting incident; and a frank assessment including his opinions and perspectives on what occurred and what should have occurred. A section entitled "Physical Evidence," in which the evidence from the scene, particularly the gun powder patterns, is assessed in comparison to witness statements, is included as an attachment to the memorandum. Also attached is a set of diagrams illustrating the officers' positions during the traffic stop and applicable general orders and statutes.

The Review Level Committee (Foxworth, Assistant Chief Lynnae Berg, Assistant Chief Andrew Kirkland, and Commander Bret Smith) submitted a confidential memorandum to Chief Kroeker. It is two pages long; most of the second page was ordered redacted and the *Oregonian* does not contest that decision. The remaining material identifies in general terms some procedures and policies "identified * * * for internal review and action." It does not mention any officers or incidents by name.

After the full review of the incident, each of the four members of the Review Level Committee voted on whether he or she believed that McCollister or the other officers had conducted themselves according to bureau policies and procedures and on what they thought was the appropriate level of discipline. The *Oregonian* requests disclosure of the voting logs that pertain to McCollister.

None of these documents contains material the disclosure of which would have a seriously chilling effect on future investigations, particularly in light of the fact that the description of events, the findings, and the discipline imposed were already disclosed before the *Oregonian* made its

request. No otherwise anonymous whistle blower is identified; no personal criticism (as opposed to findings regarding which actions fell outside of bureau policies) is leveled. Supervisory personnel render judgments, but they are clinical and detached. To conclude that public disclosure of such judgments, made pursuant to supervisory duties, would discourage future candor is an insult to the supervisors themselves.

The city argues that the need for confidentiality in the present case is weightier than normal: "[I]t is particularly in 'high profile' cases that recognizing [the exemption in ORS 192.502(1)] will do the *most* good in encouraging * * * self-critical investigation and analysis[.]" (Emphasis in original.) That may be. It is beyond dispute, however, that the public's (and the police bureau's) need to have complete confidence that a thorough and unbiased inquiry has occurred is most urgent and compelling in "high profile" cases where a police officer has killed a citizen in the line of duty. That confidence comes from transparency and its value is not outweighed by the speculation that transparency will quell candor at some future date. This is not a close case.[3]

Affirmed.

---

[3] Although the city states in the first paragraph of its brief ("Nature of the proceeding and the relief sought") that it "seeks reversal of the trial court's order granting *Oregonian*'s petition for costs and attorney fees pursuant to ORS 192.490(1)," the brief contains neither an assignment of error nor any argument regarding costs and fees. We therefore leave the trial court's award undisturbed.