No. 58 September 15, 2016 269

IN THE SUPREME COURT OF THE
STATE OF OREGON

AMERICAN CIVIL LIBERTIES
UNION OF OREGON, INC.,
an Oregon non-profit public
benefit corporation,
*Petitioner on Review,*

*v.*

CITY OF EUGENE, OREGON,
a municipal corporation,
*Respondent on Review,*

*and*

CIVILIAN REVIEW BOARD
OF THE CITY OF EUGENE, OREGON,
*Defendant.*

(CC 161024398, CA A150403, SC S063430)

On review from the Court of Appeals.*

Argued and submitted March 10, 2016.

Steven M. Wilker, Tonkon Torp LLP, Portland, argued the cause and filed the brief for petitioner on review. With him on the brief was Sarah M. Einowski.

Jerome Lidz, City Attorney's Office, City of Eugene, argued the cause and filed the brief for respondent on review. With him on the brief was Glenn Klein.

Before Balmer, Chief Justice, Kistler, Walters, Landau, Baldwin, and Brewer, Justices, and Roger DeHoog, Justice Pro Tempore.**

WALTERS, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____

* Appeal from Lane County Circuit Court, Josephine H. Mooney, Judge. 271 Or App 276, 350 P3d 507 (2015).

** Nakamoto, J., did not participate in the consideration or decision of this case.

**WALTERS, J.**

At issue in this case is a conditional exemption from the "right to inspect any public record of a public body in this state." ORS 192.420(1). *Former* ORS 181.854(3) (2013), *renumbered as* ORS 181A.830(3) (2015), exempts from inspection information about a personnel investigation of a public safety officer if the investigation does not result in discipline of the officer.[1] That exemption is, however, conditional. It does not apply when "the public interest requires disclosure of the information." ORS 181.854(4)(a).[2] As we will explain, when that exemption applies, a trial court must determine, as a matter of both law and fact, the nature and significance of two competing interests—the public's interest in disclosure and the public body's interest in confidentiality. Then, the court must balance those competing interests and determine, as a matter of law, which interest predominates. In this case, after considering the nature and significance of the competing interests, we conclude that the public interest in disclosure of the requested records predominates, and the trial court erred in declining to order their disclosure. We reverse the contrary decision of the Court of Appeals, *American Civil Liberties Union v. City of Eugene*, 271 Or App 276, 350 P3d 507 (2015), and the judgment of the trial court and remand for further proceedings.[3]

---

[1] In 2015, the legislature renumbered ORS 181.854 as ORS 181A.830, but the text of the statute did not change. For simplicity, we will refer to that statute throughout this opinion as ORS 181.854 because that was its numbering at the time that this case was decided in the trial court and the Court of Appeals.

[2] As relevant here, ORS 181.854 provides:

"(3) A public body may not disclose information about a personnel investigation of a public safety employee of the public body if the investigation does not result in discipline of the employee.

"(4) Subsection (3) of this section does not apply:

"(a) When the public interest requires disclosure of the information.

"(b) When the employee consents to disclosure in writing.

"(c) When disclosure is necessary for an investigation by the public body, the Department of Public Safety Standards and Training or a citizen review body designated by the public body.

"(d) When the public body determines that nondisclosure of the information would adversely affect the confidence of the public in the public body."

[3] Because we reverse for the reasons stated, we do not reach ACLU's argument that the exemption set out in ORS 181.854(3) does not apply when records are disclosed to a civilian review board pursuant to ORS 181.854(4)(c).

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   *Stipulated Facts*

This case was tried to the circuit court on the following stipulated facts:

"1.   The City of Eugene (the City) is a public body.

"2.   The Civilian Review Board ('CRB') of the City of Eugene is a citizen review body established by Eugene City Code § 2.240.

"3.   The CRB was 'established *** to increase the transparency of, and public confidence in, the police complaint process. In general, the civilian review board shall evaluate the work of the independent police auditor, and may review completed complaint investigations involving sworn police employees to provide comment, from a civilian perspective, about whether the complaint was handled fairly and with due diligence.' Eugene City Code § 2.240(1).

"4.   The CRB was 'intended [to] provide a system of independent oversight of the police complaint process and implement section 15-A of the Eugene Charter of 2002 as adopted by the city electorate on November 8, 2005 [and to] serve as an advisory body to the city council.' Eugene City Code § 2.240(2) and (4).

"5.   On May 30, 2008, police officers employed by the City of Eugene used Taser stun guns in the process of arresting [Mr.] Van Ornum[4] and others during a protest in downtown Eugene against the use of pesticides (the 'Van Ornum Case').

"6.   In June 2008, the [CRB] designated the Van Ornum Case as a 'Community Impact Case.' The Van Ornum Case was the first case designated as a 'Community Impact Case' in the CRB's then three[-]year history[,] and no other case has been so designated since that time.

---

[4] In this proceeding and in the criminal trial court, Mr. Van Ornum's surname is shown as "Van Ornum." In the appellate and Supreme Court proceedings following his conviction, however, his surname is shown as "Vanornum." *State v. Vanornum*, 354 Or 614, 317 P3d 889 (2013). We will refer to him as Mr. Van Ornum throughout this opinion.

"7.    Following the incident, the Internal Affairs division of the Eugene Police Department investigated the Van Ornum Case and the officers involved in the case.

"8.    The Internal Affairs investigation of the Van Ornum Case was a personnel investigation of the public safety officers employed by the City of Eugene involved in the incident.

"9.    The Internal Affairs investigation file of the Van Ornum Case was transmitted to the Police Chief, the Police Auditor and, later, to the [CRB].

"10.   Police Chief [] Kerns made preliminary findings regarding the conduct of the officers involved in the Van Ornum Case as follows:

"1.    Policy Manual (POM) 901.1. Use of Force

"a.    The force used by the three officers involved in the arrest of Mr. Van Ornum and the arrest of [Mr.] Farley—within policy.

"b.    The arresting officer repeatedly pounded Mr. Van Ornum's head into the pavement—unfounded.

"2.    POM 309.4. Use of the Taser

"a.    The use or actual application of the Taser by the arresting officer while affecting the arrest of Mr. Van Ornum and defending himself against Mr. Farley—within policy.

"b.    The use of the Taser not fired by a second officer to defend the arresting officer from Mr. Farley—within policy.

"3.    POM 901.1 Use of Force—The force used by the officer in pushing Mr. Owen and striking Mr. Farley—within policy.

"4.    POM 1101.1(6) a—Constitutional Rights—That the officer had probable cause to arrest Mr. Owen for the crimes for which he was charged—within policy.

"11.   On October 1, 2009, the [CRB] held a public meeting to consider and vote on the preliminary findings made by Chief Kerns. The [CRB] concurred unanimously in all but one of Chief Kerns' preliminary findings. The

CRB concurred by a 4-2 vote in preliminary finding 2.a: 'The use or actual application of the Taser by the arresting officer while affecting the arrest of Mr. Van Ornum and defending himself against Mr. Farley— within policy.

"12.    Chief Kerns subsequently confirmed his preliminary findings, making a final adjudication that the officers' conduct was within policy and that the complaints were unfounded. The Internal Affairs investigation did not result in discipline.

"13.    On December 15, 2009, plaintiff American Civil Liberties Union of Oregon, Inc. ('ACLU'), made a request under the Oregon Public Records law to inspect and copy 'all documents used by the Civilian Review Board in reviewing and deciding the May 30, 2008, [] Van Ornum Community Impact Case.

"14.    The City of Eugene denied ACLU the opportunity to inspect and copy the requested records because 'the subsequent investigation did not result in discipline of any police officer' and 'pursuant to ORS 181.854(3), and the City's determination that no exception to the statutory prohibition exist in this instance, the City is prohibited from releasing information related to the personnel investigation arising from the May 30, 2008, incident.

"15.    On July 9, 2010, ACLU petitioned the Lane County District Attorney to review the City of Eugene's denial of the public records request.

"16.    In response to the petition, the City of Eugene released some of the records that had been withheld, but continued to assert that the portions of the Internal Affairs investigative file that had not been released were confidential and not subject to disclosure.

"17.    The Lane County District Attorney declined to order disclosure of the requested documents.

"18.    ACLU filed this action to compel the City of Eugene to disclose the requested documents."

B.    *Trial and the Trial Court Decision*

At the outset of trial, the court took judicial notice of the documents in its file and received plaintiff's exhibits

1-38, some of which were designated as joint exhibits. The admitted exhibits included ACLU's request for documents and a letter from the city attorney explaining, as stipulated, that the City had declined to produce the requested documents because "the subsequent investigation did not result in discipline of any police officer" and "pursuant to ORS 181.854(3), and the City's determination that no exception to the statutory prohibition exists in this instance, the City is prohibited from releasing information related to the personnel investigation arising from the May 30, 2008[,] incident." The admitted exhibits also included printouts from Van Ornum's criminal trial; minutes of CRB meetings; the 2009 Annual Report of the City's police auditor; numerous newspaper articles that discussed the use of Tasers and the CRB review; and the deposition testimony of the police chief. After receiving that evidence, the court ruled that the City had the burden to establish the existence of an exemption to disclosure. However, the court explained, once the City met that burden, the burden "[shifted] to the requesting party to establish than an exception to that exemption applies."

ACLU then called its executive director, David Fidanque, to the stand. In his declaration on summary judgment (judicially noticed by the court) and in his testimony at trial, Fidanque testified that the CRB was created because there were "issues of concern regarding allegations of police misconduct" and that the CRB "was given unique authority to oversee and make recommendations concerning allegations of police misconduct in dealings with the public." Fidanque explained that ACLU was interested in reviewing the records in the Van Ornum case because of its ongoing concern "about the interaction between the operation of the independent police auditor and [the CRB] *vis-à-vis* the police department and the Internal Affairs office, and the chief as well." In particular, Fidanque said, ACLU was concerned that some members of the CRB had indicated that they had discounted certain witness statements from people who were participating in the protest in favor of other witness accounts, despite the fact that the discounted witnesses were closer in proximity to the scene of the arrest. Fidanque testified that ACLU was interested in reviewing the witness

statements to determine whether the CRB was performing its expected role:

> "[T]he public interest is to help the public understand whether the system they created in order to provide independent oversight of the police department in police misconduct allegation cases is operating as intended * * *.
>
> "So that, just to put that in plain English, is the review board acting in the way that the voters intended when they created it?"

ACLU rested after Fidanque's testimony, and the court considered the City's motion to dismiss. In that motion, the City asserted that ACLU had no right to disclosure for the following reasons:

> "On the law and the facts presented in this case, including the evidence of the comprehensive public disclosure during the trial of *State v. Van Ornum* of the facts of the May 30, 2008, incident that is the subject of the records which [p]laintiff seeks to be publicly disclosed, the disclosure of those records to a public investigatory body—the Civilian Review Board (CRB)—and the public disclosure of the minutes of the CRB's October 1, 2010, meeting at which the CRB reviewed those records, [p]laintiff has shown no right to the relief it seeks."

(Internal footnote omitted.) The court denied the City's motion, and, at the City's request, then admitted, and took a brief recess to review *in camera*, the only exhibit proffered by the City—a sealed envelope containing the disputed records. The City did not call any witnesses. However, as noted, one of the exhibits that ACLU proffered and that the court received was the deposition testimony of the police chief. In his deposition, the chief testified that he had made the determination not to disclose the records because he had "conferred with the City's attorneys and asked for their legal advice on whether or not to release [them]," and made his decision "based on the advice of [his] counsel."

After the City rested, the court announced its decision. The court began by explaining that the evidence suggested that there were two competing public interests. The first was the public interest in "ensuring appropriate use of

force and, in particular, Tasers by law enforcement." The second was the "public interest in having a safe, high quality police department *** that can effectively review its own actions and provide discipline, evaluation, and training for its officers." The court found that the existence of the CRB was evidence of the second of those two competing interests and that the CRB had been created to balance and safeguard "the public interest in competition here." The court noted that the exception in ORS 181.854(4)(c), which allows public bodies to release the kind of information involved in this case to a citizen review body, such as the CRB, further indicated that the CRB's role was to balance those interests:

> "ORS [181].854(4)(c) carves out a narrow exception that allows disclosure to the [CRB] of records they need to do just that. That provision was created to act as a waiver of confidentiality when a [CRB] is involved. It was created to extend that confidentiality so as to allow the review or the oversight that that body provides, so to allow oversight while protecting confidentiality and therein lies the balance."

Thus, with regard to the public interest in appropriate use of force by police, the court determined that disclosure was not required because the CRB provided public oversight while maintaining the confidentiality that the statute anticipated.

Assuming that ACLU had the burden to prove that the public interest required disclosure, the court then said that

> "[t]he ACLU was instrumental in, according to Mr. Fidanque's testimony, and likely should be applauded for its role in creating[,] the [CRB] in order to have that oversight here in Eugene, but I don't think the evidence has shown in this case that the public interest now requires disclosure of the internal review records that the [CRB] reviewed in order to now oversee what the [CRB] did.

> "So sort of that riddle of finality, how much is enough? When is enough enough? So do we keep—do we set up review boards and then seek review of their work and then keep going on? Sort of like the *Cat in the Hat* stories. Every time the cat takes his hat off, another cat pops out. And when does—when does it end?

"Disclosure at this juncture to review the review board, \*\*\* I find is not required based upon the evidence presented, and, thus, the ACLU, as plaintiff in this case, has failed to meet its burden of establishing that the exception applies."

However, the court went on to explain, even if the City had the burden of establishing an exemption to disclosure, the court would have found that the evidence supported nondisclosure. The court indicated that, given its findings regarding the CRB's function and the statutory scheme, it would have reached the same result. Furthermore, the court said, it had reviewed the requested records *in camera* and noted that "there was nothing in those records that caused [him] to conclude that the public interest would require \*\*\* disclosure of those records in this case." The court then entered a general judgment in favor of the City, consistent with its ruling.

C.   *Court of Appeals Decision*

The Court of Appeals affirmed. *American Civil Liberties Union*, 271 Or App at 278. The court began by stating the standard of review that it intended to apply:

"[W]e accept the trial court's findings of historical fact if those findings are supported by any evidence in the record, and we review the trial court's conclusions for legal error."

*Id.* at 279. The court also stated the legal standard for determining whether an exemption under ORS 181.854 applies:

"Thus, as in the cases involving the applicability of the public-interest exception in ORS 192.501, we conclude that, when a trial court is analyzing whether the public-interest exception in ORS 181.854(4)(a) applies, the court must balance the public interest in disclosure against the public body's interest in nondisclosure, with the presumption in favor of disclosure."

*Id.* at 288.

The court then explained its understanding of the trial court's decision. *Id.* at 288-89. The Court of Appeals said

that the trial court had (1) identified the public interest in disclosure as an interest in "ensuring that police officers are using appropriate force in their interactions with the public"; (2) identified the public body's interest in confidentiality as an interest in "having a police force that can effectively review its own actions and provide discipline and training for its officers"; (3) determined that "the CRB was created to balance those interests—to allow for oversight of police misconduct while maintaining confidentiality of the police's internal investigation of complaints against its officers"; and (4) determined, "based on the evidence presented," that the public interest in transparency of the CRB's work did not require disclosure. *Id*.

Finally, the Court of Appeals concluded that none of the trial court's conclusions were erroneous. *Id*. at 289-90. The court reasoned that the trial court had not erred in deciding that the "mere existence of a public interest in government transparency is insufficient to warrant release" of the departmental investigation and that the trial court "could reasonably determine that ACLU failed to demonstrate that the public's interest in transparency required release of the records." *Id*. at 290-91. Further, the Court of Appeals explained, the record showed that the CRB had extensively reviewed the departmental investigation in a public forum; the trial court had reviewed the investigative records *in camera*; and the trial court had concluded that the public interest did not require disclosure of those records so that the public could reach its own conclusions about the sufficiency of those reviews. *Id*. at 291. Thus, the Court of Appeals concluded, "[g]iven the evidence presented," the trial court had not erred. *Id*.

## II.   APPLICABLE LEGAL STANDARDS

It now falls to us to make our own determination about whether the trial court erred in declining to order disclosure. To do so, we must first consider the applicable legal standards—both the legal standard that a trial court is required to apply in deciding whether to require disclosure of public records and the legal standard that an appellate court is required to apply in reviewing a trial court's decision.

A.  *The Legal Standards That a Trial Court is Required to Apply*

Before this court, the parties seem to agree with the Court of Appeals that, to determine whether the public interest requires disclosure under ORS 181.854, a trial court must balance the public's interest in disclosure against the public body's interest in confidentiality, with the presumption in favor of disclosure. In confirming that that is the applicable legal standard, we proceed as follows. First, we briefly summarize the history of the Public Records Law and its underlying principles. Second, we outline a case decided by the Court of Appeals in 1988, a year before the enactment of ORS 181.854, and reason from those underlying principles and that enactment history. Third, we explain that, in determining the nature and significance of the competing interests that a trial court must balance, a trial court must consider both law and fact. Fourth, we conclude that a trial court's conclusion about which of the competing interests predominates is a question of law.

1.  *History of Public Records Law and underlying principles*

The right to inspect public records is set forth in ORS 192.420(1):

> "Every person has a right to inspect any public record of a public body in this state, except as otherwise expressly provided by ORS 192.501 to 192.505."

Some version of that right to inspection has been part of Oregon law since 1862. *Jordan v. MVD*, 308 Or 433, 437, 781 P2d 1203 (1989). That right was included in the original Deady Code, and, in 1961, the legislature reaffirmed it and deleted a provision that had limited it to those with a "lawful purpose." *Id*.

In 1961, in an opinion authored by Chief Justice O'Connell, this court decided *MacEwan v. Holm et al*, 226 Or 27, 359 P2d 413 (1961). The question presented was whether the plaintiff had a right to inspect data collected by the State Board of Heath relating to nuclear radiation sources. *Id*. at 29. At that time, ORS 192.010 provided that

"[e]very citizen of this state has a right to inspect any public writing of this state, except as otherwise expressly provided by statute." *Id*. at 34-35. The court determined that the data that the plaintiff sought constituted a "public writing" as that term was used in ORS 192.010 and that no other statute expressly provided an exemption. *Id*. at 39. In making that determination, the court described the principles that underlie the public's right to inspect public records:

> "Writings coming into the hands of public officers in connection with their official functions should generally be accessible to members of the public so that there will be an opportunity to determine whether those who have been entrusted with the affairs of government are honestly, faithfully and competently performing their function as public servants. *Nowack v. Auditor General*, [243 Mich 200, 219 NW 749 (1928)]. 'Public business is the public's business. The people have the right to know. Freedom of information [about public records and proceedings] is their just heritage. *** Citizens *** must have the *legal* right to *** investigate the conduct of [their] affairs.' Cross, *The People's Right to Know*, p xiii (1953)."

*Id*. at 38 (emphasis in original). But the court also observed that "[t]he public's right of inspection is not without qualification." *Id*. at 44. As a result, the court explained, in determining whether the records should be made available for public inspection in any particular instance, a court must balance the interest of the citizen in knowing what the servants of government are doing and the citizen's proprietary interest in public property, against the interest of the public in having the business of government carried on efficiently and without undue interference. *Id*. at 45.

In conducting that balancing, the court said that

> "the scales must reflect the fundamental right of a citizen to have access to the public records as contrasted with the incidental right of the agency to be free from unreasonable interference. Note: *Access to Official Information: A Neglected Constitutional Right*, 27 Ind LJ. 209 (1951)."

*Id*. at 46. And, significantly, the court described the public's fundamental interest as placing the "burden of proof" on the public entity opposing disclosure:

"*The citizen's predominant interest may be expressed in terms of the burden of proof which is applicable in this class of cases*; the burden is cast upon the agency to explain why the records sought should not be furnished."

*Id*. (emphasis added). "Ultimately," however, the court explained that it falls to the courts to determine whether disclosure is required:

"[It] is for the courts to decide whether the explanation is reasonable and to weigh the benefits accruing to the agency from nondisclosure against the harm which may result to the public if such records are not made available for inspection."

*Id*.

In 1973, the legislature adopted a more detailed Public Records Law. Or Laws 1973, ch 794. That law "continued the general rule mandating disclosure of public records unless an exemption expressly applies." *Jordan*, 308 Or at 437. And it also incorporated a number of the concepts that the court had discussed in *MacEwan*. The new Public Records Law provided that "the burden is on the public body to sustain its action," ORS 192.490(1), and made certain categories of documents exempt from inspection "unless the public interest requires disclosure in the particular instance," ORS 192.501.

2.   *The Court of Appeals decision in 1998 and the enactment of ORS 181.854*

In 1998, just one year prior to the enactment of the statute at issue in this case, the Court of Appeals decided *Oregonian Publishing v. Portland School Dist. No. 1J*, 144 Or App 180, 182, 925 P2d 591 (1996), *modified and adh'd to on recons*, 152 Or App 135, 952 P2d 66 (1998). In that case, The Oregonian sought disclosure of an investigative report that had resulted in the discipline of public school teachers. *Id*. at 182-83. One of the questions presented was whether the report was exempt from disclosure under ORS 192.501(12). *Id*. at 187. That statute provided (and continues to provide) an exemption for "a personnel discipline action, or materials or documents supporting that action," ORS 192.501(12), unless "the public interest requires disclosure

in the particular instance," ORS 192.501. The court began by explaining the exemption provided by ORS 192.501(12) as a conditional exemption that requires a court to "balance the private interest in confidentiality against the public interest in disclosure." *Oregonian Publishing*, 144 Or App at 187. The court then described the public interest in disclosure. The court quoted *Guard Publishing Co. v. Lane County School Dist. No. 4J*, 96 Or App 463, 469, 774 P2d 494 (1989), *rev'd*, 310 Or 32, 791 P2d 854 (1990), for the proposition that "'the Public Records [inspection law] expresses the legislature's view that members of the public are entitled to information that will facilitate their understanding of how public business is conducted,'" and also cited the fact that the teachers had been investigated for misuse and theft of public property as indicating that the public's interest in disclosure was significant. *Oregonian Publishing*, 144 Or App at 187. In describing the competing "private" interest in confidentiality, the court cited the fact that the matter already had received substantial publicity and concluded that "it is not clear that disclosure of the documents will intrude into any privacy that [the employees] enjoy with respect to it." *Id*. Then, weighing those interests, "with the presumption always being in favor of disclosure," the court concluded that the documents were not exempt under ORS 192.501(12).[5] *Id*. (internal quotation marks omitted).

A year later, the legislature adopted the similarly worded conditional exemption at issue in this case. Or Laws 1999, ch 855, § 3. While ORS 192.501(12) provides an exemption to disclosure when a public employee *is* subjected to discipline, ORS 181.854(3) provides an exemption to disclosure when a public safety employee *is not* subjected to discipline.[6] Both exemptions are similar, however, in that they are conditional. Like ORS 192.501(12), ORS 181.854(3) does not apply "when the public interest requires disclosure of

---

[5] This court affirmed. *Oregonian Publishing v. Portland School Dist. No. 1J*, 329 Or 393, 987 P2d 480 (1999). However, the only issue on review was the applicability of another exemption provided by ORS 342.850(8); this court did not discuss the conditional exemption provided by ORS 192.501(12).

[6] ORS 181.854 is incorporated into the Public Records Act by ORS 192.502(9)(a). That statute provides a catch-all exemption for all records "the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under Oregon law." ORS 192.502(9)(a).

the information." ORS 181.854(4)(a). As relevant here, ORS 181.854 provides:

> "(3)   A public body may not disclose information about a personnel investigation of a public safety employee of the public body if the investigation does not result in discipline of the employee.

> "(4)   Subsection (3) of this section does not apply:

> "(a)   When the public interest requires disclosure of the information.

> "(b)   When the employee consents to disclosure in writing.

> "(c)   When disclosure is necessary for an investigation by the public body, the Department of Public Safety Standards and Training or a citizen review body designated by the public body.

> "(d)   When the public body determines that nondisclosure of the information would adversely affect the confidence of the public in the public body."

When it enacted ORS 181.854 in 1999, the legislature had the benefit of the Court of Appeals decision in *Oregonian Publishing*, and we presume that the legislature was aware of that decision. *See Johnson v. Gibson*, 358 Or 624, 635, 369 P3d 1151 (2016) (presuming that legislature was aware of existing case law). We think it likely that the legislature intended to require a similar balancing test to determine the applicability of the conditional exemption that it provided in that statute.[7] The balancing of competing

---

[7]   Throughout its brief in this court, the City acknowledges that, in considering the exemption in ORS 181.854(3), a trial court must determine whether the public interest in disclosure outweighs the competing interest in confidentiality, with the presumption in favor of disclosure. That said, the City also asserts that because ORS 181.854(3) affirmatively *prohibits* disclosure of the records of a personnel investigation of a public safety employee that does not result in discipline, the interest in confidentiality is greater than the interest afforded to records that are "merely" exempt from disclosure. That means, the City argues, that "the balancing of interests starts from a different point." The City is correct that this court has interpreted exemptions from disclosure to *permit* but not to *require* a public body to withhold requested documents. *Guard Publishing Co. v. Lane County School Dist. No. 4J*, 310 Or 32, 37-38, 791 P2d 854 (1990). However, if a public body withholds documents for any reason, whether it chooses to do so or believes it is required to do so, a court must decide whether the public interest nevertheless requires disclosure. We agree with the Court of Appeals that the

interests has been a feature of the Public Records Law since this court's decision in *MacEwan*, and, like the parties and Court of Appeals, we conclude that, to decide the applicability of the conditional exemption provided by ORS 181.854(3), the appropriate question for a trial court is whether the public interest in disclosure outweighs the competing interest in confidentiality, with the presumption in favor of disclosure.

3. *Determination of the nature and significance of competing interests*

We also think it evident from the Court of Appeals decision in *Oregonian Publishing* that a trial court's determination of the nature and significance of the interests that it must balance in deciding whether to order disclosure of public documents may entail consideration of both law and fact. In that case, as noted, the Court of Appeals discussed as relevant both the applicable legal principles and the facts that had been proffered by the parties to conclude that, in the particular circumstances presented, there were competing interests in disclosure and confidentiality, and that the interest in disclosure was particularly significant and the interest in privacy was somewhat diminished. *Oregonian Publishing*, 144 Or App at 187.

This court has taken that same approach. It has explained that a plaintiff is entitled to rely on the statute that grants the public a right to inspect public documents—ORS 192.420(1)—and the "strong and enduring policy that public records and governmental activities be open to the public" to establish the public's interest in disclosure. *Jordan*, 308 Or at 438. In addition, this court has recognized that other aspects of the law may be of assistance in determining the nature of the competing interests. For instance, in *Jordan*, the court considered the legislature's reasons for the compilation and dissemination of certain motor vehicle information in determining the nature of the public interest in the disclosure of that information. *Id*. at 439. The court also looked to the text of the statute exempting such information

---

legal standard used to analyze the public-interest exception in ORS 181.854(4)(a) should not differ from that used to analyze the public-interest exception in ORS 192.501, and we note that the parties did not argue otherwise in the Court of Appeals. *American Civil Liberties Union*, 271 Or App at 287.

from disclosure to determine the nature of the interest in maintaining the confidentiality of the records. *Id*. at 441-42.

This court has not, however, limited its analysis to legal arguments alone. This court also has discussed the evidence presented by the parties in assessing the nature and significance of the competing interests. Thus, in *Jordan*, the court considered an affidavit describing the harm that could result if the requested motor vehicle information were disclosed. *Id*. at 436. And in *Sadler v. Oregon State Bar*, 275 Or 279, 283-84, 550 P2d 1218 (1976), the court declined to accept the defendant's argument that individuals would not be willing to criticize attorneys if they knew that their complaints could become public knowledge because the defendant had not presented evidence to establish that point. Similarly, the Court of Appeals has considered factual evidence, or the lack of such evidence, in assessing the competing interests of the public and the public body. *See, e.g.*, *City of Portland v. Oregonian Publishing Co.*, 200 Or App 120, 124-25, 112 P3d 457 (2005) (court considered affidavits and documents); *In Defense of Animals v. OHSU*, 199 Or App 160, 171, 178-79, 112 P3d 336 (2005) (court considered contractual provisions and lack of evidence).

As the Court of Appeals observed in *Turner v. Reed*, 22 Or App 177, 187, 538 P2d 373 (1975), for certain categories of documents, the nature of the competing interests may be determined as a matter of law. For others, the parties may be required to identify and prove the interests at stake. *Id*. at 193. Whether a party is required to introduce facts establishing the nature and significance of an interest that favors disclosure or confidentiality will depend on whether the interest on which the party relies is evident as a matter of law or is dependent on the production of evidence.

When a party can establish the interest in disclosure or confidentiality as a matter of law, the party is not required to adduce additional evidence of that interest. When, however, a party cannot establish such an interest as a matter of law, the party must adduce evidence of the interest in disclosure or confidentiality before that interest can be weighed against a competing interest. And a party is not limited to available legal arguments. A party is entitled

to adduce facts to establish an interest in disclosure or confidentiality, or, if a party wishes to claim that the interest propounded is of greater or lesser import given the particular circumstances that the case presents, the party again may rely on legal arguments or evidence that it proffers. A statute or its context may indicate that a party's interest is more or less weighty in the relevant circumstances, and facts adduced by a party may demonstrate that a claimed interest is more or less weighty than it might appear in the abstract.

4. *Determination of which interest predominates is a question of law*

Once a trial court has determined the nature and significance of the competing interests, the court, as indicated, must balance the public's interest in disclosure against the public body's interest in confidentiality. In this case, the City describes that balancing as a fact-finding process and asserts that an appellate court must affirm the trial court's conclusion if there are any facts to support it. In support of that position, the City relies on a Court of Appeals case—*In Defense of Animals*, 199 Or App at 169, 176. In that case, however, the Court of Appeals did not describe the balancing process as a fact-finding process, nor did it defer to the trial court's conclusions. Instead, the Court of Appeals reviewed the trial court record *de novo*, pursuant to *former* ORS 19.415(3). *Id*. at 162. That statute has since been amended to permit but not require *de novo* appellate review. Or Laws 2009, ch 231, § 2. In this case, the Court of Appeals conducted its review under the current version of ORS 19.415 and declined to exercise its authority to conduct *de novo* review. *American Civil Liberties Union*, 271 Or App at 278. Thus, *In Defense of Animals* does not aid us in deciding whether the City is correct that the balancing required by ORS 181.854(4)(a) is a fact-finding process, and we look instead to relevant provisions of the Public Records Law and our cases interpreting that law.

ORS 192.490(1) provides that, in a suit to order the production of records improperly withheld, the "burden" is on the public body to sustain its action. That reference to "burden" is often used to describe the "burden" of producing

factual evidence or persuading a fact-finder of the truth of that evidence. But, in our view, the Public Records Law does not use the term "burden" in either of those senses.

When this court said, in *MacEwan*, that the "citizen's predominant interest may be expressed in terms of the *burden of proof*," what it meant was not that a court must decide as a factual matter whether a particular fact has been established, but that a court must "weigh the benefits accruing to the agency from its nondisclosure against the harm which may result to the public if such records are not made available for inspection." 226 Or at 46 (emphasis added). By placing the "burden" on the public entity opposing disclosure, the court, in *MacEwan*, meant to indicate not that a court must engage in a fact-finding process, but that, if the interests are in equipoise, the people's interest in disclosure must prevail. In our view, when the legislature provided, in ORS 192.490(1), that, in a public records action, the "burden is on the public body to sustain its action," it intended to use the term "burden" in the same sense that this court used it in *MacEwan*—not to indicate that, in weighing competing interests, a court should decide a factual question, but to indicate that, when the parties' interests are of equal value, the public's interest in disclosure predominates.

The scale that a court uses to measure the relative weight of competing interests is not a scale that measures whether a fact is or is not true; it is a scale that determines which of two legal interests predominates. When a trial court uses such a scale to answer a question that has only one legally correct answer, it decides that question as a matter of law. *See, e.g., Horton v. OHSU*, 359 Or 168, 376 P3d 998 (2016) (weighing state's constitutionally recognized interest in sovereign immunity against plaintiff's right to a remedy as a matter of law); *Wallulis v. Dymowski*, 323 Or 337, 348, 918 P2d 755 (1996) (weighing competing interests in determining whether defamatory statement is privileged as a matter of law); *State v. Tourtillott*, 289 Or 845, 618 P2d 423 (1980) (weighing governmental interest in enforcement of laws against intrusion on rights of people stopped at roadblock as a matter of law). In contrast, when there is more than one legally correct answer to a legal question, a trial

court exercises its discretion to determine the answer that it deems correct. *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000); *see, e.g.*, *State v. Sparks*, 336 Or 298, 308-09, 83 P3d 304 (2004) (appellate court reviews trial court's decision under OEC 403 as to whether probative value is outweighed by other factors for abuse of discretion).

In *Jordan*, when this court reviewed the trial court's balancing of competing interests, it assumed, correctly, that there was only one legally correct answer to the question of which of two competing interests predominated. 308 Or at 443. That understanding reflects not only the nature of the decision, but also the need to accord the same weight to the same interests. *See Guard Publishing Co.*, 310 Or at 37 (legislature intended that Public Records Law be applied "with a large measure of uniformity"). Although particular facts may augment or diminish the weight that a court accords to competing interests, and a trial court's decision about which interest predominates may be affected by its factual findings, that does not mean that the balancing process itself constitutes a factual determination or an exercise of discretion. It does not. When a trial court determines which competing interest predominates, it arrives at a legal conclusion.

B.  *Appellate Standard of Review*

The standard by which an appellate court reviews a trial court's decisions is determined by their nature. As the Court of Appeals said at the outset of its opinion in this case, appellate courts, "accept the trial court's findings of historical fact if those findings are supported by any evidence in the record, and we review the trial court's conclusions for legal error." *American Civil Liberties Union*, 271 Or App at 279.[8] When an appellate court reviews a trial court's conclusions about the nature and significance of the relevant

---

[8] The Court of Appeals opinion may not be entirely consistent in its application of that standard of review. In affirming the decision of the trial court, the Court of Appeals stated that the trial court "could reasonably determine that ACLU failed to demonstrate that the public's interest in transparency required release of the records," seeming to defer to the trial court's finding as though it were a factual finding. *American Civil Liberties Union*, 271 Or App at 291. However, in other parts of its opinion, the Court of Appeals also seemed to reach its own conclusion about whether the trial court's reasoning was correct, and, in

competing interests, it reviews the trial court's factual findings to determine if there is evidence in the record to support them; it reviews the trial court's legal conclusions for legal error. When an appellate court reviews a trial court's conclusion about which of the competing interests that it has identified is predominant, and, therefore, whether disclosure is required, it reviews that legal conclusion for legal error.

### III.   APPLICATION OF LEGAL STANDARDS

Having identified the applicable legal standards, we now proceed to an analysis of whether the trial court erred in concluding that the records at issue in this case are exempt from disclosure under ORS 181.854(3). The records at issue can be described, generally, as portions of the Internal Affairs investigative file used by the CRB to review and decide the Van Ornum case.

As step one in deciding whether to order disclosure of those records, the trial court was required to determine the nature and significance of the competing interests in disclosure and confidentiality. The court was required to consider the text and context of the Public Records Law, the text and context of ORS 181.854, and other legal arguments pressed by the parties. The court also was required to consider evidence, if any, that the parties adduced that was relevant to the nature or significance of the competing interests. Then, as step two in the process, the court was required to weigh those interests and decide, as a matter of law, which interest predominated. If the trial court considered the interests to be in equipoise or to weigh in favor of disclosure, the trial court was required to order disclosure.

In conducting our review of the trial court's analysis, we too begin at step one with the trial court's legal conclusions and factual findings regarding the nature and significance of the competing interests. As noted, we accept the trial court's findings of fact if they are supported by evidence in the record, and we review the trial court's legal conclusions for legal error. At step two, we examine, for legal

---

closing, stated that, "[g]iven the evidence presented, the [trial] court did not err in concluding that the public  interest did not require disclosure." *Id.*

correctness, whether the trial court erred in weighing those interests and in determining that the documents at issue were exempt from disclosure.

A.  *Nature and Significance of Competing Interests*

  1.  *The public's interest in disclosure*

    We begin with the nature and significance of the public interest in disclosure. The only aspect of the public interest in disclosure that the trial court identified was the public interest in disclosure of information about police department operations. The trial court explained that the evidence suggested that the public had an interest in "ensuring the appropriate use of force and, in particular, Tasers by law enforcement." However, the trial court decided, that interest was met by the creation of the CRB. The trial court reasoned that the CRB had been established to provide public oversight of police operations while, at the same time, protecting confidentiality.

    In so limiting its description of the public interest in disclosure, the trial court erred. As the City acknowledges, the public has a significant interest in acquiring "information about how public business is conducted" and in monitoring "public officials' performance of their duties." That interest extends not only to the business of the police department, but also to the business of the entity established to monitor the performance of the police department—the CRB. The stipulated facts established that (1) the CRB was intended to provide a system of "independent" oversight of the police complaint process; (2) the CRB had designated the Van Ornum case as a "Community Impact Case"; (3) the Van Ornum case was the first such case in the three year history of the CRB, and no other case had been so designated since that time; and (4) the CRB had concurred unanimously in all but one of the police chief's preliminary findings, and the chief had subsequently confirmed his preliminary findings. The uncontested facts established that (1) members of the public had an ongoing concern about "the interaction between the operation of the independent police auditor and [the CRB] *vis-à-vis* the police department and the Internal Affairs office, and the chief as

well"; (2) members of the public were interested in reviewing witness statements to determine whether the CRB was performing its expected role; and (3) the public had an interest in determining whether the CRB was acting in the way that the voters intended when they created it.

Rather than considering the public's interest in reviewing the effectiveness of the CRB, the trial court apparently discounted that interest, reasoning, from ORS 181.854(4) and the creation of the CRB, that the CRB was intended to provide the public with the only oversight it needed. That legal conclusion is incorrect. As noted, ORS 181.854 provides:

> "(3)   A public body may not disclose information about a personnel investigation of a public safety employee of the public body if the investigation does not result in discipline of the employee.

> "(4)   Subsection (3) of this section does not apply:

> "(a)   When the public interest requires disclosure of the information.

> "(b)   When the employee consents to disclosure in writing.

> "(c)   When disclosure is necessary for an investigation by the public body, the Department of Public Safety Standards and Training or a citizen review body designated by the public body.

> "(d)   When the public body determines that nondisclosure of the information would adversely affect the confidence of the public in the public body."

Thus, ORS 181.854(4)(c) anticipates the formation of citizen review bodies and provides that a public body does not violate the prohibitions of ORS 181.854(3) by providing information about the discipline of police officers to a citizen review body designated by the public body. Nevertheless, ORS 181.854 (4)(a) also permits disclosure of such records to the general public in instances in which the public interest requires such disclosure. ORS 181.854 does not provide that, when a public body creates a citizen review board, only the board is entitled to information about the discipline of police officers or that the public is not entitled to information about how

the board itself conducts its business. The trial court erred in determining, as a matter of law, that ORS 181.854(4) and the creation of the CRB indicate that the public had no cognizable interest in disclosure of the requested CRB records.

With regard to the significance of the public's interest in disclosure, ACLU contends that the Public Records Law has long been interpreted as protecting the public's interest in transparency, and that the evidence it presented established that that interest was particularly great in this case. ACLU argues that the evidence demonstrates that the case was one of high profile that required public oversight, both because it involved the police use of force and because it was the first case that the CRB had designated as a "Community Impact Case."

The City responds that the evidence demonstrates that the records and information available to the public included a vast amount of information about the Van Ornum arrest, the departmental investigation, the CRB's review of that investigation and the police chief's adjudication, as well as the reasons that the CRB concurred with the police chief's adjudication. According to the City, because that information provided ample insight into how the City conducts its business, the public's interest in the disclosure of additional information is diminished and disclosure is not required.

We agree with the City that the fact that the public already had substantial information about police departmental and CRB operations was a proper consideration in the trial court's analysis, but we do not agree that it necessarily cuts in favor of confidentiality. On the one hand, the public's knowledge of many aspects of those operations may reduce its need for additional information. On the other hand, when information is withheld, the public may suspect that the City has something to hide. Full disclosure may not be as necessary when substantial disclosure has occurred, or full disclosure may serve the public's interest in promoting public trust in governmental action.

2.  *The public body's interest in confidentiality*

We turn now to the City's competing interest in confidentiality. On review, the City contends that there

are three aspects of that interest that favor confidentiality: (1) an interest in protecting the privacy of officers whose alleged misconduct is not substantiated; (2) an interest in effectively reviewing its own actions and providing discipline, evaluation, and training for its officers; and (3) an interest in encouraging witness candor and protecting witness concerns about potential retaliation. We will consider each in turn, but before we do, we take up ACLU's threshold argument that the trial court committed legal error in considering any aspect of the City's interest in confidentiality because the City did not offer any *evidence* of any such interest. We reject that argument. As we have explained, to establish an interest in disclosure or confidentiality a party may rely solely on legal arguments. Thus, the City was permitted to argue from ORS 181.854(3) alone that public bodies have an interest in maintaining the confidentiality of information about a personnel investigation of a public safety officer when the investigation does not result in discipline of the employee. Although the City also was permitted to make other legal arguments about the nature of its interest in confidentiality and to adduce evidence of its interests given the particular factual circumstances presented, it was not required to do so. The City was entitled to rest its argument for nondisclosure on that statute alone, and ACLU's argument that the trial court erred in recognizing an interest in confidentiality because the City did not adduce evidence of that interest is without merit.

We also reject ACLU's second argument that the only interest in confidentiality that ORS 181.854(3) permits a court to consider is an interest in protecting the privacy of officers who are not disciplined for alleged wrongdoing. ACLU contends that that limitation arises from the fact that the exemption is an exemption for records of personnel investigations of public safety officers who are not subjected to discipline. ACLU also observes that ORS 181.854(6) requires that a public body notify a public safety officer when requested records include certain private information such as that kept in a personal or medical file or certain personal identifying information such as date of birth, and social security and telephone

numbers.[9] Accordingly, ACLU contends, the sole purpose of ORS 181.854(3) is to preserve an officer's privacy.

We agree with both the City and ACLU that ORS 181.854(3) evidences a legislative intent to protect the privacy of officers whose alleged misconduct is not substantiated. However, we do not agree with ACLU that that is the only interest that the statute is intended to protect. Although the statute requires that the public body inform an employee of a request for certain private and personal identifying information, it does not prohibit disclosure without the consent of the affected employee. In that regard, ORS 181.854(3) differs from ORS 181.854(2), which makes disclosure of an officer's photograph dependent on the officer's consent. ORS 181.854(3) appears to anticipate that the public body may have an interest in confidentiality that is separate from the interest of the public employee.

We do agree, however, with another argument that ACLU makes about the nature of the City's interest in protecting its officers' privacy. ACLU contends that the evidence at trial indicated that that interest was diminished in this case because the identity of the officers whose conduct was in question already had been disclosed. The evidence indeed demonstrates that when the City charged and tried Van Ornum for criminal conduct, the identity of the officers who arrested him and used Tasers in the process was revealed and extensively discussed. In the public CRB meetings during which the CRB reviewed the police chief's recommendation to dismiss the charges of officer misconduct, the conduct of the officers also was publicly discussed. The City concedes as much, but contends that an officer's interest in privacy "would not evaporate simply because the officer's name has been publicized. The report may well contain personal information, beyond the officer's identity, that the public has no legitimate interest in knowing." The City's caution is a legitimate one that may affect a court's analysis

---

[9] ORS 181.854(6) requires that a public body notify a public safety officer of a request for information about the officer that is exempt from disclosure under ORS 192.501 or ORS 192.502(2) or (3). ORS 192.502(2) provides an exemption for certain private information such as that kept in a personal or medical file. ORS 192.502(3) provides an exemption to certain personal identifying information such as dates of birth, and social security and telephone numbers.

depending on the facts in a particular case, but, unless such personal information is implicated, the fact that an officer's identity and alleged conduct is already a matter of public record demonstrates that a public body has a significantly diminished interest in protecting the officer's privacy. *See Oregonian Publishing*, 144 Or App at 187 (court considered fact of prior publicity in holding that records must be disclosed).

The second aspect of its interest in confidentiality on which the City relies in this court is an interest in having a "safe, high quality police department, one that can effectively review its own actions and provide discipline, evaluation, and training for its officers." At trial, to establish that interest, the City relied solely on the existence of the CRB and the fact that the Eugene Code provisions and the protocols governing the CRB require that internal affairs investigation files be provided to the CRB "for its confidential review." The City was entitled to rely on the legal arguments and evidence and was not required to present, and did not present, additional evidence about the nature and significance of that interest as it applied to the requested records. For instance, the City did not present evidence that the requested records would reveal information that would compromise the City's efforts to discipline, evaluate, or train its employees, that the existence of confidential CRB review made those tasks more effective than they would be if disclosure were required, or that it would be more difficult for the City to engage in those tasks in the absence of confidentiality. The City's failure to present such evidence does not mean that the City did not meet its burden of production or persuasion, but it does mean that the trial court could not consider evidence that the City did not present.[10] Thus, although the trial court was correct to consider the City's abstract interest in effective discipline, evaluation, and training, as shown by its creation of the CRB, it was that abstract interest alone that the trial court was entitled to weigh.

---

[10] If a party wishes to argue that the disclosure of particular information will cause harm, but is hesitant to identify that information because its identification will itself result in harm, the party is entitled to describe the nature of the information and harm generally and ask the trial court to examine the information *in camera*.

The trial court was not, however, required to weigh, and apparently did not weigh, a third aspect of an interest in confidentiality. On review in this court, the City describes its interest in confidentiality as including encouraging witness candor and protecting witness concerns about potential retaliation. The City contends that the requested records include numerous interviews of witnesses and demonstrate that some witnesses were concerned about participating in the investigation. The immediate problem with the City's contention, however, is that the City did not advance a similar contention at trial.[11] The City *did* ask the trial court to conduct an *in camera* review of the requested records, but it *did not* ask the trial court to determine from those records that the public body has an interest in encouraging witness candor and addressing potential witness retaliation, and the trial court's findings and conclusions do not indicate that the trial court reviewed the records for that purpose. When a party fails to inform a trial court of an argument, we generally will not address it for the first time in this court. ORAP 5.45(2); *see State v. Lotches*, 331 Or 455, 492-93, 17 P3d 1045 (2000) (court refused to consider argument that defendant failed to make before trial court). The trial court therefore did not err in failing to take witness candor and potential retaliation into consideration in weighing the competing interests.

B.   *Balancing the Competing Interests*

In summary, the competing interests presented to the trial court and that the trial court was required to balance were, on one side, the public's interest in transparency of police department and CRB operations, and, on the other side, the City's interest in protecting the privacy of its police officers and in effectively disciplining, evaluating, and training those officers. As we have indicated, the trial court made a number of legal errors in identifying and determining the significance of those interests and we could remand this case to that court to conduct the balancing in accordance with this decision. However, because the historical facts are

---

[11] The City also did not assert that the requested records included information subject to exemption under ORS 192.502(4), an exemption for certain information submitted to a public body in confidence.

undisputed and balancing requires only legal analysis, we are as equipped as is the trial court to take on that task. Given the evidence presented, we conclude for the following reasons that, in this instance, the public interest in disclosure predominates.

We begin with the public interest in disclosure and conclude that the public interest in the transparency of government operations is particularly significant when it comes to the operation of its police departments and the review of allegations of officer misconduct. Every day we, the public, ask police officers to patrol our streets and sidewalks to protect us and to enforce our laws. Those officers carry weapons and have immense power. Some members of the public fear the abuse of that power. By the same token, police officers are themselves vulnerable. Many of those who drive our streets and walk our sidewalks also carry weapons. Some officers fear their use of those weapons and their resistance to legal authority. When our system of justice works as we expect it to, officers use their authority legitimately, members of the public comply with their instructions, and the dangers of escalating violence are avoided. But for our system to work as we expect it to, the public must trust that officers are using their authority legitimately, and officers must trust that the people they stop will respond appropriately. Without mutual trust, the police cannot do their work effectively and the public cannot feel safe.

One way to promote that necessary mutual trust is to make police practices and procedures transparent and to make complaints about police misconduct and the discipline that is or is not meted out open to public inspection. It is important for the public to know when the police overstep; it is important for the public to know when they do not. And it is important that the basis for differing results be known and understood. Some members of the public are suspicious. Tragic wrongs have not been addressed. Some members of the police force feel unfairly accused. Too few members of the public really appreciate what it takes to do the jobs that police officers do and the everyday dangers that they bravely face. As the trial court in this case said, it is laudable that the City created the CRB to review police department operations and to give the public a role in overseeing

its disciplinary processes. But, when it comes to complaints about the use of force and the review of those complaints, the public interest in oversight is particularly strong. *See Oregonian Publishing*, 144 Or App at 187 (concluding that public interest particularly strong where public employees accused of misuse and theft of public property).

The evidence in this case established that the public had a particular interest in whether the police engaged in excessive force, and this case was the first case that the CRB denominated as a "Community Impact Case." Whether the police use of force was within city policy and whether the CRB fulfilled its responsibility to review the police chief's recommendations with rigor and without bias were important matters to the public. The people's right to inspect public records is "fundamental," *MacEwan*, 226 Or at 46, and in the circumstances present here, the public interest in transparency carries significant weight.

In contrast, the interests in confidentiality established at trial in this case were not equally fundamental. The public body's interest in protecting the privacy of officers whose conduct was questioned was substantially diminished because the identity of those officers and their alleged misconduct had already been made a matter of public record. The City established that it had created the CRB to enable it to confidentially review allegations of officer misconduct, but it did not proffer evidence that public inspection of documents considered by the CRB would affect its ability to effectively discipline, evaluate, or train its officers. We consider it significant that, when asked for his reasons for declining to disclose the requested information, the police chief did not identify any harm that would accrue to city officers or the City if it were required to disclose the requested information. Instead, the police chief testified only that he had declined to disclose the information on the advice of counsel. The City made no showing that disclosure posed a risk of harm to its employees or operations, and it is not our role to decide whether the public's interest in monitoring the public's business may be satisfied with some quantum of information less than full disclosure. "Our decisions reflect the preference for a policy of governmental openness in Oregon."

*Jordan*, 308 Or at 438. On this record, we conclude that the public interest in transparency requires disclosure of the requested documents.

We do, however, harbor a remaining concern about whether immediate release of the requested documents could violate individual rights to privacy. In this case, the City took the position at trial that the requested records were exempt from disclosure in their entirety, and the trial court agreed. Perhaps for that reason, the City asserted only generally that its officers had an interest in privacy; it did not assert more particularly that disclosure of certain specific material in those records would violate a particular individual's right to privacy or be exempt under another provision of the Public Records Law intended to protect individual privacy rights. For instance, ORS 192.502(2) exempts from disclosure "[i]nformation of a personal nature such as but not limited to that kept in a personal, medical or similar file, if public disclosure would constitute an unreasonable invasion of privacy, unless the public interest *** requires disclosure." And ORS 192.502(3) exempts certain personal identifying information such as date of birth, and social security and telephone numbers unless the "public interest requires disclosure in a particular instance."

We are cognizant that disclosure of requested records is not an all-or-nothing proposition. *Gray v. Salem-Keizer School District*, 139 Or App 556, 566, 912 P2d 938 (1996). *See* ORS 192.505 (requiring public body to separate material that is exempt from disclosure from that that is not exempt and make the nonexempt material available for inspection). Where there are discrete parts of requested documents that reveal private or personal identifying information unrelated to the allegations of misconduct at issue, a court may order that those discrete parts remain confidential. *See Jordan*, 308 Or at 442-43 (party seeking disclosure failed to meet burden to overcome entitlement to exemption where information was of a personal nature and disclosure would constitute unreasonable invasion of privacy). For that reason, we remand this case to the circuit court to give the City an opportunity to identify any private or personal identifying information and request that the court maintain its confidentiality.

If the City finds that the requested documents include such information, we expect that the City will file a request for redaction in the trial court describing the general nature of the information that the City seeks to have redacted and serve that request on ACLU. We also expect that the City will provide the trial court with a copy of the requested documents specifically indicating its requested redactions for the court's *in camera* review. After affording ACLU an opportunity to object to the City's request to redact the specified information, and, on request of either party, holding a hearing, the trial court may order redaction.[12] Except as so ordered, the trial court shall then enter an order requiring the City to disclose the requested documents in their entirety.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[12] The trial court is not required to order redaction. On request, the court must weigh competing interests that the parties identify. We note in that regard that the exemptions provided by ORS 192.502(2) and (3) are conditional and may not apply if the public interest requires disclosure.